**McALLEN MEDICAL CENTER, INC., Petitioner,**

v.

**Ramiro CORTEZ, Jr., et al., Respondents.**

No. 00–0710.

Supreme Court of Texas.

Argued March 21, 2001.

Decided Aug. 30, 2001.

Patricia Kelly, Roger W. Hughes, Adams & Graham, Harlingen, for petitioner.

George G. Brin, Brin & Brin, Celeste P. Lira, San Antonio, for respondents.

Michael A. Caddell, Joe Phillips, Cynthia Bodendiec Chapman, Caddell & Chapman, Donald Lee Harvey, Houston, for respondents.

Ezequiel Reyna, Jr., Law Offices of Ezequiel Reyna, Jr., Weslaco, Mark A. Cantu, Law Offices of Mark A. Cantu, McAllen, for respondents.

Justice O'NEILL delivered the opinion of the Court.

Plaintiff brought this putative class action against a doctor and the hospital where he practiced, claiming that they had misrepresented the hospital's cardiac surgeons' qualifications. When the plaintiff settled with the doctor, the trial court certified a "settlement-only" plaintiff class, preliminarily approved the settlement, and scheduled a fairness hearing at which it would review and finalize both the certification and the settlement. *See* TEX.R. CIV. P. 42. The hospital attempted to appeal the trial court's order, but the court of appeals dismissed the appeal. 17 S.W.3d 305. It held that the hospital lacked standing to challenge the order and that the challenge to both certification and settlement was premature pending the fairness hearing's disposition. *Id.* at 309–10. We hold that the hospital's certification challenge is ripe and that it has standing to appeal the trial court's order. Accordingly, we reverse the court of appeals' judgment dismissing the hospital's appeal and remand the case to that court for further proceedings.

## I. Background

Ramiro Cortez, Jr., filed this putative class action against McAllen Medical Center (MMC) and Dr. Francisco Bracamontes, a cardiac surgeon at MMC. Cortez alleges that Bracamontes and MMC misrepresented to cardiac-surgery patients that all MMC cardiac surgeons were board certified. He seeks economic damages from both MMC and Bracamontes, and damages for mental anguish and intentional infliction of emotional distress from Bracamontes. Two-and-one-half weeks after filing suit, Cortez reached a tentative settlement with Bracamontes, and they jointly moved for the trial court to certify a class for purposes of approving the settle-

ment. The proposed class consisted of everyone who had cardiac surgery at MMC from December 1, 1993, to May 21, 1999.

MMC received less than one day's notice of the certification hearing. MMC appeared at the hearing and asked the trial court to delay ruling on the motion until MMC could evaluate it. The trial court questioned MMC's standing to contest either the certification or the settlement, but gave MMC three days to file objections. MMC's objections contended that it had inadequate time to prepare for the hearing and that the proposed class met none of the criteria for class certification under Texas Rule of Civil Procedure 42. The trial court implicitly overruled MMC's objections when it entered an order that (1) certified a class action "for purposes of settlement with Defendant Bracamontes only," (2) preliminarily approved the settlement, (3) scheduled a fairness hearing on the settlement, and (4) provided for class notice of the class action and the proposed settlement.

The class notice is directed not just to Bracamontes's patients, but to all patients who had cardiac surgery at MMC. The notice also describes class claims against both Bracamontes and MMC. The order recites that it will not prejudice any other defendant's right to contest class certification with respect to claims against it, and provides that the court will rescind the certification if it does not approve the settlement after the fairness hearing. MMC filed an interlocutory appeal, and the parties agreed to postpone the fairness hearing pending the court of appeals' decision. The fairness hearing has not yet occurred.

MMC claims that it is directly affected by, and therefore has standing to contest, the Bracamontes class certification, class notice, and settlement. But the court of appeals dismissed MMC's appeal, holding that it did not have jurisdiction because MMC had shown no injury that would give it standing to appeal. 17 S.W.3d at 305. The court did not consider the class notice improper or harmful to MMC, and it did not believe that MMC's potential complaints about the settlement gave MMC standing to appeal the certification. *Id.* at 309–10. The court of appeals further held that the appeal was premature pending the trial court's disposition at the fairness hearing. *Id.* We granted review to consider whether the court of appeals correctly decided that it lacked jurisdiction. *See Qwest Communications Corp. v. AT & T*, 24 S.W.3d 334, 335–36 (Tex.2000).

## II. The Court of Appeals' Jurisdiction

■■■ A court of appeals' judgment in an appeal from an interlocutory class-certification order is generally conclusive on the law and facts and may not be appealed to this Court. *See* TEX. GOV'T CODE § 22.225(b)(3). Here, however, the court of appeals did not consider the merits of MMC's challenge, but instead dismissed the appeal on jurisdictional grounds. 17 S.W.3d at 310. When a court of appeals determines that it lacks jurisdiction over an interlocutory appeal, this Court has jurisdiction to review that decision. *Qwest*, 24 S.W.3d at 335–36. The parties do not dispute that the trial court's order certifies a class action and is thus subject to interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(3) (allowing appeal from an interlocutory order that certifies or refuses to certify a class action). But the interlocutory appeal statute does not supplant the constitutional requirement that the court of appeals have subject-matter jurisdiction, and both ripeness and standing are necessary components of that jurisdiction. *Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc.*, 971 S.W.2d 439, 442 (Tex.1998). Thus, we must decide whether the trial court's order is ripe for review and whether MMC has standing to challenge it.

## A. Ripeness

Texas courts have no authority to render advisory opinions. *Patterson*, 971 S.W.2d at 442–43. This prohibition encompasses cases that are not yet ripe. *Id.* The ripeness doctrine avoids premature adjudication on a hypothetical set of facts. *Id.* at 444. Cortez contends that MMC's challenges to the class-certification order and the settlement are not ripe. We address each of these arguments in turn.

### 1. The Class–Certification Order

This Court has not determined when an order certifying a settlement-only class becomes ripe for appellate review. But we have held that the trial court must conduct a complete review of Rule 42's criteria before determining that a case may proceed as a class action. *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex.2000). And we have noted that settlement does not eliminate the need for a rigorous inquiry into the class action's propriety. *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954 (Tex.1996). Our focus here is when that rigorous inquiry should occur so that it becomes ripe for appellate review.

Cortez claims that, in this case, the class-action inquiry will occur at the fairness hearing, and the trial court will then review Rule 42's numerosity, commonality, typicality, and adequacy-of-representation criteria. Because no final determination has been made, he reasons, appellate review of the trial court's order is premature. But Cortez's argument echoes the "certify now and worry later" approach that we have rejected. *Bernal*, 22 S.W.3d at 435. We require courts to "perform a 'rigorous analysis' *before* ruling on class certification to determine whether all prerequisites to certification have been met." *Id.* (emphasis added). We see no reason

why settlement-only classes should merit less rigorous treatment.

It is true that settlement-only classes present different concerns than litigation classes. Thus, in deciding whether to certify a settlement-only class, class-action criteria designed to protect absent class members demand heightened scrutiny. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)[1]; *Bloyed*, 916 S.W.2d at 954. These protections may lose effect if the trial court waits until the fairness hearing to consider them.

For example, the trial court has a special responsibility to protect absent class members from unwarranted or overbroad class definitions. *See Amchem*, 521 U.S. at 620, 117 S.Ct. 2231; *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 453 (Tex. 2000) ("A properly defined class is essential to the maintenance of a class action."). Strict scrutiny of Rule 42's criteria will likely inform and influence the trial court's class definition. For instance, careful consideration of whether, or which, common questions of law or fact will predominate over individual class members' questions will influence the class's structure and, by definition, the necessary class notice. If notice is sent to a broadly defined settlement class without regard to these considerations, the trial court's ability to later adjust the class at the fairness hearing and still protect all class members' interests may be severely limited.

The trial court in this case "conditionally" certified an "opt-out" class, and ordered notice sent to "[a]ll persons who underwent cardiac surgery at [MMC] from December 1, 1993 until May 21, 1999." The opt-out deadline is five days before

---

1. The federal class-action rule was the model for Texas Rule 42. *See* FED.R.CIV.P. 23. Accordingly, decisions interpreting the federal rule may be persuasive when interpreting Rule 42. *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 n. 4 (Tex.2000).

the scheduled fairness hearing. Consequently, the class members must make their election before the trial court determines at the fairness hearing whether the class was properly defined in the first instance. And absent class members may be confused if, after considering Rule 42's criteria, the trial court redefines the class or determines that it cannot ultimately be maintained. *See Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 352–53, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (observing that class members may rely on pending class action to protect their rights, and so forgo individual suits); *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677, 681 (7th Cir.1987) (noting that, by the time class members learn that class certification has fallen through, their only option will be to litigate their individual claims using increasingly stale evidence).

Rule 42's typicality and adequacy-of-representation criteria similarly demand heightened scrutiny when a settlement occurs. These criteria require the trial court to consider whether the asserted claims are "typical" of the putative class, and whether the class representative and its counsel will "fairly and adequately" protect the class's interest. TEX.R. CIV. P. 42(a)(3), (a)(4). If the class includes members with diverging or conflicting interests, a single class representative's claims may not be typical, and a settlement that is fair for the representative may be unfair for the class as a whole. *See Amchem,* 521 U.S. at 625–28, 117 S.Ct. 2231; *Bloyed,* 916 S.W.2d at 959. Even when the class members share a broad area of common interest, a class-wide settlement may benefit the defendant, the class representative, and class counsel far more than it benefits unnamed class members whose claims the settlement extinguishes. *See, e.g., Kamilewicz v. Bank of Boston Corp.,* 92 F.3d 506, 508–09 (7th Cir.1996). And when a settlement

occurs, the potential for class representatives and counsel to ignore differences among class members, or even collude with defendants at absent class members' expense, mandates that the trial court rigorously scrutinize Rule 42's typicality and adequacy-of-representation criteria. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 847, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (requiring heightened scrutiny because "[i]n settlement-only class actions the procedural protections built into the Rule to protect the rights of absent class members during litigation are never invoked in an adversarial setting") (citing *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231).

 Here, the trial court has allowed Cortez and his counsel to compose and send class notice, to represent themselves to the class as its spokesmen, and to formulate and defend the class settlement, without first determining that Rule 42's typicality and adequacy-of-representation requirements are met. Whether or not they are, Rule 42 requires the trial court to make that determination before it permits Cortez and his counsel to take action on the class's behalf. Because the certification order here permits Cortez and his counsel to proceed without first meeting these requirements, the order is ripe for appellate review. *See Patterson,* 971 S.W.2d at 444.

Cortez argues that the trial court's deferring full consideration of Rule 42's criteria until the fairness hearing offers benefits to the class that balance any potential harm. He notes, for instance, that a class notice distributed upon preliminary class certification allows the proposed class members to appear at the fairness hearing and object to both certification and settlement. But class notice distributed after the trial court conducts a careful Rule 42 analysis achieves the same purpose and

provides absent class members greater protection. Then, after they receive notice, class members may still voice their concerns at the fairness hearing, and the trial court may alter, amend, or withdraw its certification order at any time before final judgment to protect their interests. *See* Tex.R. Civ. P. 42(c)(1).

When a trial court preliminarily certifies a settlement-only class action, the effect on the course of the proceedings is immediate, significant, and perhaps irreparable if it is later determined that the class cannot be maintained. We hold that such an order may not be shielded from appellate review merely because it is termed "preliminary" or because the trial court may later reconsider its ruling at a fairness hearing. A fairness hearing is no substitute for rigorous adherence to Rule 42's class-action criteria. *See Amchem*, 521 U.S. at 620, 117 S.Ct. 2231. Once the trial court certified the settlement class against Bracamontes, its order was ripe for appellate review, and the court of appeals erred in dismissing MMC's appeal as "premature."

### 2. The Proposed Settlement

MMC also asked the court of appeals to disapprove certain aspects of the proposed settlement between Bracamontes and the Cortez class. The court refused, however, determining that MMC's complaints were "premature" pending the trial court's disposition at the fairness hearing. 17 S.W.3d at 310. We agree with the court of appeals that the proposed Bracamontes settlement is not ripe for review, although the court of appeals may consider the settlement's terms insofar as they may relate to reviewing the certification order. *See Amchem*, 521 U.S. at 619–22, 117 S.Ct. 2231.

Unlike the trial court's decision to certify a class action, which immediately and directly impacts the proceedings' course with possibly irremediable consequences, the trial court's preliminary approval of the Bracamontes settlement has no binding force. Rather, the settlement does not gain legal effect until the trial court gives its final approval. Tex.R. Civ. P. 42(e). The trial court has a duty at the fairness hearing to examine the proposed settlement thoroughly, with input from objectors, and may approve the settlement only if the court determines that it is fair. *See Bloyed*, 916 S.W.2d at 958. Until then, the proposed settlement's terms do not affect the parties or the proceedings, and appellate review is premature.

### B. Standing

Although the class certification order is ripe for appellate review, only a party with standing may seek that review. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex.2000). An issue is ripe when it presents a fully developed controversy, while standing requires that the controversy adversely affect the party seeking review. *Planned Parenthood*, 971 S.W.2d at 442.

The court of appeals held that MMC had no standing to challenge the trial court's certification order. 17 S.W.3d at 310. In its analysis, the court relied upon Fifth Circuit authority for the proposition that "non-settling defendants generally have no standing to complain about a *settlement*, since they are not members of the settling class." *Id.* at 309 (emphasis in original) (citing *Transamerican Ref. Corp. v. Dravo Corp.*, 952 F.2d 898, 899 (5th Cir.1992)). Concluding that any injury MMC might suffer from the Bracamontes *settlement* was speculative and premature, the appellate court held that MMC lacked standing to appeal the *certification* order because "MMC [could not] do indirectly what it may not do directly." *Id.* at 310.

Thus, the court of appeals presumed that if the Bracamontes settlement does not affect MMC, neither does the certification.

Cortez echoes the court of appeals' reasoning here, arguing that the order has no effect on MMC because it certifies a class only for the limited purpose of settling with Bracamontes. Cortez contends MMC will only be affected if and when the trial court certifies a class against MMC, and until then MMC has no standing to appeal. In response, MMC suggests that Rule 42 does not allow the trial court to certify a class action against fewer than all defendants. In any event, MMC notes several ways in which the certification order injures it, giving MMC standing to pursue its appeal.

▪ We need not decide today whether Rule 42 generally prohibits piecemeal certification against individual defendants. Rather, we hold that a nonsettling defendant has standing to contest certification of a settlement class if the nonsettling defendant can show that the certification adversely affects it. Determining adverse effect necessarily requires a case-specific inquiry. We conclude that, in this case, MMC has shown sufficient adverse effect to confer standing to appeal the certification order.

The certification order defines a broad settlement class. Although the order purportedly concerns a proposed settlement with Bracamontes, the class includes everyone who had cardiac surgery at MMC from December 1, 1993, to May 21, 1999. The class is not limited to patients Bracamontes treated or those who might otherwise have encountered Bracamontes while at MMC. Moreover, the approved notice to the broadly defined class treats MMC as a class defendant. The notice provides:

1. Notice.... The purpose of this Notice is to inform you of the *pendency*

*of a class action against Defendants McAllen Medical Center, Inc. ("MMC"), and Francisco I. Bracamontes, M.D. ("Settling Defendant"), (collectively "Defendants"),* and the proposed settlement with the Settling Defendant.

2. Description of the Litigation. This Lawsuit was filed *against Defendants* and Settling Defendant alleging misrepresentations concerning the level of services, and the overcharging for such services, *by Defendants* and Settling Defendant to all persons who underwent cardiac surgery at McAllen Medical Center from December 1, 1993, until May 21, 1999. The lawsuit alleges, among other things, that *Defendants* knowingly misrepresented the qualifications of the physicians performing cardiac surgery at McAllen Medical Center and the quality of services provided to cardiac patients at MMC.

. . .

4. Proposed Settlement with Settling Defendant.... Class Counsel has investigated the claims against Settling Defendant and believe he was not responsible for the misrepresentations at issue....

5. Class Counsel's Fees. There will be no attorney's fees paid to Class Counsel as part of the proposed settlement with Settling Defendant. Class Counsel believe, however, that the Settling Defendant's cooperation will add significant benefit to the claims of the Class set forth in the Lawsuit.

(Emphasis added).[2]

The class notice speaks of a class action against both MMC and Bracamontes, sug-

---

**2.** The class notice was published in June 1999. In July 1999, the trial court ordered a

gesting incorrectly that a class action has been certified against both defendants. The notice describes the plaintiffs' claims against both defendants, but, by stating that Bracamontes is not responsible for the misrepresentations, it clearly implies that all fault lies with MMC. It also advises class members that the settlement with Bracamontes will help the class litigate against MMC, even though no such class has been certified.

The certification order and class notice adversely impact MMC by allowing class counsel to assert MMC's complicity to the broadly defined class and solicit claims against MMC, while at the same time denying MMC the opportunity to object because the order purportedly relates only to a settlement with Bracamontes. Even more damaging, the class notice has the trial court's imprimatur, priming the class to participate in a virtually certain future attempt to have the trial court certify a class against MMC. And even if the claims against MMC do not ultimately achieve class status, class counsel has a head start on representing the settlement-only class members in future individual claims against MMC, whether those claims are limited to the purely economic-injury claims asserted here or encompass more potentially lucrative individual personal-injury claims. Such strategic tactics should not deprive MMC of the opportunity to object to a potentially damaging certification order just because the class is limited to the settling defendant.

 Cortez suggests that recognizing MMC's standing to appeal unfairly elevates a nonsettling party's interests over the settling parties' interests. Clearly, a nonsettling defendant may not thwart a settling defendant's decision to settle and

has no standing to object to a settlement, or certification of a settlement class, simply because it might strategically prefer to have company in the courtroom. Here, however, MMC complains not that Bracamontes prefers to settle, but that the class certification and notice adversely affect MMC's legal interests.

 Moreover, fairness to absent class members is at least as important as fairness to individual defendants. We reject MMC's argument that it has standing simply as a surrogate for unnamed class members, but note that the trial court's responsibility to protect the class allows it to deny class-action certification even when the named plaintiff and the only defendant prefer it. *See Bloyed,* 916 S.W.2d at 954. We hold that MMC's certification challenge is ripe and that MMC has standing to raise it. Accordingly, the court of appeals erred in dismissing MMC's appeal of the certification order for want of jurisdiction.

### III. Our Jurisdiction

 Rather than limiting our review to deciding the court of appeals' jurisdiction, MMC claims we have conflicts jurisdiction to review the merits of the trial court's certification order. *See* TEX. GOV'T CODE § 22.225(b)(3). Jurisdiction over interlocutory appeals is generally final in the courts of appeals. *See* TEX. GOV'T CODE § 22.225(b). But this Court has jurisdiction over interlocutory appeals when the court of appeals' decision conflicts with a prior decision of another court of appeals or this Court on a question of law material to the decision of the case. *See id.* §§ 22.225(c); 22.001(a)(2). Without such a conflict, our jurisdiction is limited to decid-

---

supplemental class notice. It is unclear from the record whether this supplemental notice was actually published. Nevertheless, the

portions of the notice we recite are materially the same as those contained in the supplemental notice.

ing whether the court of appeals correctly exercised or refused to exercise its jurisdiction. *See* TEX. GOV'T CODE § 22.225(b); *Qwest*, 24 S.W.3d at 335–36. For cases to conflict for jurisdictional purposes, " 'the conflict must be on the very question of law actually involved and determined, in respect of an issue in both cases, the test being whether one would operate to overrule the other in case they were both rendered by the same court.' " *Coastal Corp. v. Garza*, 979 S.W.2d 318, 319–20 (Tex.1998) (quoting *Christy v. Williams*, 156 Tex. 555, 298 S.W.2d 565, 568–69 (1957)) (quoting *West Disinfecting Co. v. Trustees of Crosby Indep. Sch. Dist.*, 135 Tex. 492, 143 S.W.2d 749, 750 (1940)). In determining conflicts jurisdiction, we decide whether the rulings in the allegedly conflicting cases are " 'so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other.' " *Id.* (quoting *Gonzalez v. Avalos*, 907 S.W.2d 443, 444 (Tex.1995)) (quoting *Christy*, 298 S.W.2d at 567). Although factual identity is not required, no conflict between the cases exists if "a material factual difference legitimately distinguishes their holdings." *Id.* at 320.

■ MMC contends that the court of appeals' opinion in this case conflicts with *St. Louis Southwestern Railway Co. v. Voluntary Purchasing Groups, Inc.*, 929 S.W.2d 25 (Tex.App.—Texarkana 1996, no writ). There, the trial court certified a mandatory class action "subject to further order of the Court." 929 S.W.2d at 28. Appellees argued that this language made the order only preliminary and not subject to interlocutory appeal under section 51.014(a)(3) of the Tex.Civ.Prac. & Rem. Code Ann. *Id.* at 29. The court of appeals rejected that argument and held that this general language did not preclude interlocutory appeal under section 51.014(a)(3). *Id.* at 29. The court determined that the

certification order's "subject to further order" language merely expressed what is true in every class-certification decision: that is, under Rule 42, a class-certification order is always subject to alteration, amendment, or withdrawal. *Id.* at 29. The court reasoned that the interlocutory-appeal statute would be meaningless if a court could insulate its certification order from review merely by including general language reflecting Rule 42's terms in the order. *Id.*

MMC contends that here the court of appeals must have determined that, because the certification order was termed "preliminary," MMC's appeal was premature under section 51.014. This holding, MMC contends, conflicts with *St. Louis Southwestern*. We disagree. Contrary to MMC's suggestion, the court of appeals here accepted jurisdiction under section 51.014(a)(3), noting "[w]e construe MMC's points as an interlocutory challenge to certification which section 51.014(a)(3) permits." 17 S.W.3d at 308. Thus, the court noted its jurisdiction under the statute just as the *St. Louis Southwestern* court did. On this point, the cases do not conflict.

The court of appeals here acknowledged its jurisdiction under the statute, but also held that MMC, a nonsettling defendant, lacked standing to contest a settlement with another defendant, and that MMC's objections to the settlement's terms were premature because the fairness hearing had not occurred. *Id.* at 309–10. Although the court declined to consider whether the trial court properly applied the Rule 42 criteria until after the fairness hearing, it did so based upon the erroneous presumption that any effect the certification might have on MMC would not occur unless and until the settlement was approved. *Id.* at 310. Thus, the court based its holding on a perceived link between the certification order and

the settlement and its conclusion that neither affected MMC until after the settlement hearing. In contrast, the court in *St. Louis Southwestern* did not address a jurisdictional question that turned on standing, and its rationale is materially distinguishable from the court of appeals' reasoning here. Because there are material factual and legal differences that legitimately distinguish the two holdings, our conflicts jurisdiction is not invoked. *See Coastal,* 979 S.W.2d at 319–20. Accordingly, our review is limited to determining whether the court of appeals properly exercised its jurisdiction. *See Qwest,* 24 S.W.3d at 335–36.

### IV. The Severance Order

■ After the court of appeals dismissed MMC's appeal, and while MMC's petition for review was pending in this Court, the trial court allowed Cortez to file a Fourth Amended Petition. The amended petition (1) states that Cortez seeks to represent a class only against Bracamontes, (2) adds four new plaintiffs who seek to represent a class only against MMC and three new MMC-related entities, (3) asserts new claims of unjust enrichment and breach of fiduciary duty, and (4) alleges additional misrepresentations and breaches of contract. After filing their amended petition, the plaintiffs moved the trial court to sever their claims into two separate causes with the Cortez class proceeding against Bracamontes only, and the new plaintiffs proceeding against MMC and related entities. The trial court granted the severance motion, but we stayed the trial court's order to protect our jurisdiction pending our disposition. *See* Tex.R.App. P. 29.3.

■ While an interlocutory appeal from a certification order is pending, the trial court may not make an order that "interferes with or impairs the jurisdiction of the appellate court or effectiveness of any relief sought or that may be granted on appeal." Tex.R.App. P. 29.5(b). The trial court's severance order in this case, issued while MMC's appeal was pending, clearly impairs the effectiveness of the relief MMC seeks. MMC claims it has standing to challenge the certification order based upon injuries it alleges result from the order: an overly broad class and an inaccurate and prejudicial class notice. If the trial court's severance order is given effect, MMC will no longer be a party to the case in which it alleges injury. Although MMC could attempt to intervene in the severed cause, the time for appealing the certification order would have expired and MMC would have no avenue for relief. *See* Tex.R.App. P. 26.1(b), 28.1. While Cortez promises not to argue that severance affects this Court's jurisdiction over MMC's appeal, standing is a component of subject-matter jurisdiction and cannot be waived. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 445 (Tex. 1993). Because the severance order interferes with the effectiveness of the appellate relief MMC seeks, we vacate the order to protect the court of appeals' jurisdiction. *See* Tex.R.App. P. 29.5(b), 29.6(a)(2).

### V. Conclusion

We hold that MMC has standing to challenge the trial court's certification order, and that its appeal is ripe for review. Accordingly, we reverse the court of appeals' judgment dismissing MMC's appeal on jurisdictional grounds and remand the case to the court of appeals for further proceedings consistent with this opinion. To protect the court of appeals' jurisdiction, we vacate the trial court's severance order.