# NO. 12-14-00085-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *COWBOY'S RETAIL & WHOLESALE BEVERAGE DISTRIBUTION, LLC, KYLE GILLIN, AND GREAT AMERICAN TREATING, INC., APPELLANTS* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #3* |
| *PEGGYE DAVIS, JIM DAVIS, JAY DAVIS, AND RICHARD L. RAY, TRUSTEE, APPELLEES* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Cowboy's Retail and Wholesale Beverage Distribution, LLC, Kyle Gillin, and Great American Treating, Inc. (collectively Appellants) appeal from an adverse summary judgment rendered in favor of Peggye Davis, Jim Davis, Jay Davis, and Richard L. Ray, trustee (collectively Appellees). In four issues, Appellants contend the trial court failed to dispose of all claims, erred in granting summary judgment for Appellees, and erred in denying Appellants' motion for partial summary judgment. We reverse and remand.

## BACKGROUND

Gillin and Mike Mitchell formed Cowboy's Retail and Wholesale Beverage Distribution, LLC to operate a liquor store in Winona, a small town in Smith County. The Davises owned Tucker's Beverages Inc., a liquor store located in Gregg County. In January 2011, Gillin and the Davises signed a "Sale and Purchase Agreement" pursuant to which Cowboy's purchased "all of the issued and outstanding shares of common stock" of Tucker's. Gillin, individually and as president of Cowboy's, signed a promissory note in the amount of $1,790,000.00 to be paid to

the Davises as "lender." The note was secured by a security agreement and deed of trust covering the Gregg County property. As further security, Gillin also signed deeds of trust covering the Winona property and land owned by Great American Treating, Inc. Neither of these properties was described in the sales contract. Cowboy's was to pay $790,000.00 on July 10, 2011, and subsequent installments of $50,000.00 each in certain months until July 2016.

Cowboy's took possession of Tucker's Beverages' inventory but never made any payments on the note. Therefore, Appellees began nonjudicial foreclosure proceedings with respect to the real property securing the note. Appellants filed suit to stop the foreclosure sale and have the purchase agreement reviewed by the court. They asked the court to rescind the contract due to the Davises' fraud, or reform the contract, or find that the Davises breached the contract. Additionally, they asked for a declaratory judgment on the basis that there was no meeting of the minds as to material contract terms and a declaratory judgment cancelling the contract because it was an "incorrect draft" obtained by fraudulent representations. Appellees counterclaimed, seeking a money judgment on the note or, alternatively, foreclosure of the deed of trust liens.

Appellants filed a motion for partial summary judgment alleging that, due to fraud or mistake, no agreement was reached on material terms of the contract. They argued that all of the elements of equitable rescission have been met and asked the court to rescind the contract. The trial court denied Appellants' motion.

Appellees filed a no evidence motion for summary judgment in which they asserted that there is no evidence to support Appellants' claims of fraud, fraudulent inducement, or breach of contract. Appellees also filed a motion for traditional summary judgment arguing that, because Cowboy's failed to pay the promissory note, Appellees are entitled to foreclose on the real property securing the note. The trial court granted both motions and granted "[a]ll affirmative relief requested by [Appellees]." This appeal followed.

<u>JURISDICTION</u>

In their fourth issue, Appellants contend the trial court erroneously disposed of their declaratory judgment action. They argue that Appellees' motion for no evidence summary judgment did not address their declaratory judgment action and the court erroneously determined that cause of action to be based on fraud. Appellants also assert that the trial court's judgment

2

does not dispose of their requests for rescission, reformation, or declaratory judgment on the basis of no meeting of the minds or their requested declaratory judgment cancelling the contract on the basis of a scrivener's error. They also complain that the judgment does not identify the parties by name or specify the relief awarded. Accordingly, they argue, the judgment is not final and this court lacks jurisdiction.

## Applicable Law

As a general rule, an appeal may be taken only from a final judgment. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). A judgment issued without a conventional trial is final only if it either actually disposes of all claims and parties before the court, or it states with unmistakable clarity that it is a final judgment. *See id*. at 200. A judgment that grants more relief than a party is entitled to receive is thus erroneous and subject to reversal, but it is not, for that reason alone, interlocutory. *Id*. When the trial court grants more relief than requested by disposing of issues never presented to it, the appellate court reverses and remands as to those claims while addressing the merits of the properly presented claims. *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 886-87 (Tex. App.—Dallas 2011, no pet.).

While the better practice is to recite the names of all parties in the judgment, when the names of all parties are easily ascertainable from the record, failure to do so is not fatal. *See Crystal City Indep. Sch. Dist. v. Wagner*, 605 S.W.2d 743, 747 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.). A judgment must be sufficiently definite and certain to define and protect the rights of all litigants, or it should provide a definite means of ascertaining such rights. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994).

## Analysis

The trial court's summary judgment stated in part as follows:

> IT IS FURTHER ORDERED that Defendants' Motion for No-Evidence Summary Judgment is granted. Accordingly, Defendants' motion being based on Plaintiffs' cause of action for fraud and breach of contract, and Plaintiffs' remaining causes of action for rescission and declaratory judgment being based on the allegation of fraud, Plaintiffs' claims for rescission and declaratory judgment are rendered moot and hereby dismissed.
>
> IT IS FURTHER ORDERED that Defendants' Motion for Traditional Summary Judgment is granted. All affirmative relief requested by Defendants' is hereby granted.
>
> IT IS FURTHER ORDERED that this Order supersedes those Orders entered by this Court on November 19, 2013. This order is final and appealable.

3

The summary judgment disposed of all pending motions and stated that it is final and appealable. A judgment is final when the intent to finally dispose of the case is unequivocally expressed. *Lehmann*, 39 S.W.3d at 200. Referring to the parties as Plaintiff and Defendant does not make the judgment interlocutory. *See Wagner*, 605 S.W.2d at 747. Due to our disposition of this case as explained below, we need not address Appellants' complaint that the judgment is not sufficiently specific as to the relief awarded. *See* TEX. R. APP. P. 47.1. This summary judgment is a final and appealable judgment.

However, Appellees' motions did not address Appellants' two causes of action for declaratory judgment, one of which was based on the theory that no contract was ever formed due to "no meeting of the minds" and the other was based on "scrivener's error."[1] As a general rule, a trial court may not grant summary judgment on a claim not addressed in the summary judgment motion. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). Here, the trial court erred when it granted more relief than requested by dismissing the declaratory judgment actions. *Id*.

We overrule Appellants' fourth issue to the extent they assert that the trial court's judgment is interlocutory and this court does not have jurisdiction. We sustain their fourth issue to the extent they complain that the trial court erroneously dismissed their declaratory judgment actions.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

In their first issue, Appellants contend the trial court erred in denying their motion for partial summary judgment. In that motion, Appellants requested judgment on their claim that no contract was ever formed because the parties never agreed on the material terms of the contract. They also requested equitable rescission of the sale and purchase agreement. Their motion did not address their breach of contract cause of action or their requests for a temporary restraining order, cancellation of the note and deeds of trust, or attorney's fees. On appeal, they ask this court to reverse the denial of their motion for partial summary judgment and remand for the trial court to determine and apply the appropriate equitable remedy.

---

[1] The judgment referenced Appellants' cause of action for rescission. We note that rescission is a remedy, not a cause of action. *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 732 (Tex. App.—Fort Worth 2008, pet. dism'd).

4

The denial of a cross-motion for summary judgment is reviewable only if that cross-motion sought a disposition of all claims in the trial court. *Fair v. Arp Club Lake, Inc.*, 437 S.W.3d 619, 628 (Tex. App.—Tyler 2014, no pet.). Here, Appellants' motion for partial summary judgment did not seek a final judgment and, therefore, its denial is not reviewable. *Id*.

## NO EVIDENCE SUMMARY JUDGMENT

In their third issue, Appellants assert that Appellees' motion for no evidence summary judgment was an attempt to circumvent the special exception practice to dispose of Appellants' fraud claim on the basis of a pleading deficiency. They argue that the motion does not identify any element for which evidence is alleged to be nonexistent, but rather, Appellees complain about the way Appellants' allegations are articulated. They further assert that they raised fact issues concerning whether the Davises breached the agreement by not delivering the stock certificates and by not producing a written agreement that correctly embodied the parties' contract.

## Standard of Review

Under the no evidence summary judgment rule, a party without the burden of proof at trial may move for summary judgment on the basis that the nonmovant lacks evidence to support an essential element of its claim. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The motion must specifically state the elements for which there is no evidence. *Tempte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The mere filing of a proper motion shifts the burden to the nonmovant to come forward with enough evidence to take the case to a jury. *Roventini v. Ocular Scis., Inc.*, 111 S.W.3d 719, 722 (Tex. App.—Houston [1st Dist.] 2003, no pet.). However, a no evidence summary judgment motion that fails to specify the elements as to which there is allegedly no evidence fails as a matter of law. *Humphrey v. Pelican Isle Owners Ass'n*, 238 S.W.3d 811, 814 (Tex. App.—Waco 2007, no pet.). The appellate court reviews the evidence presented in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Gish*, 286 S.W.3d at 310. If the nonmovant brings forth more than a scintilla of evidence, that is sufficient to defeat a no evidence motion for summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence rises to a level that

5

would enable reasonable and fair minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

### Fraud

In their motion for no evidence summary judgment, Appellees explained in the introduction that they were filing the motion because Appellants "failed to properly plead all the necessary elements to support either a cause of action for fraud/fraudulent concealment or breach of contract." After reciting the standard of review applicable to no evidence summary judgments, they presented a section entitled "No Evidence to Support Non-Movants Claim of Fraud or Fraudulent Inducement." In that section, they listed the elements of fraud and explained the allegations to be contained in pleadings. Although their stated intention was to show that Appellants failed to plead a cause of action, they did not identify which elements were not properly pleaded. Moreover, the issue of whether pleadings fail to state a cause of action may not be resolved by summary judgment. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Neither did their motion identify the elements as to which there is no evidence, a requirement for showing Appellees' entitlement to judgment. *See Humphrey*, 238 S.W.3d at 814. Accordingly, the trial court erred in granting Appellees' motion for no evidence summary judgment on Appellants' cause of action for fraud or fraudulent inducement.

### Breach of Contract

In the next section of their motion for no evidence summary judgment, Appellees first listed the elements of a breach of contract cause of action. The entirety of their argument under this section is as follows:

> Movants are entitled to summary judgment in their favor as to Non-Movants' claim of breach of contract because Non-Movants have failed to establish by depositions, answers to interrogatories, or other admissible evidence, that there is evidence to support the essential elements of their claim that a valid enforceable contract existed, that Non-Movants are a proper party to sue for breach of contract, that Non-Movants performed, tendered performance or were excused from performing its contractual obligations, that Movants breached the contract, or that Movants' breach caused Non-Movants' injury.

In response, Appellants clarified that, in their pleadings, they asserted that no contract exists because the parties never agreed on all the terms of the contract as it was drafted. They argued that some of the terms were to be changed but the signed contract was never changed. Additionally, they pleaded breach of contract in the alternative and only if the court found that

6

there was a valid contract. They argued that the Davises breached the contract by failing to deliver Tucker's Beverages' stock. In support of their response, Appellants produced the affidavit of Mike Mitchell, the sale and purchase agreement, and the depositions of Mitchell, Gillin, and Jay Davis.

In his affidavit, Mitchell described a conversation he had with Jay Davis on September 17, 2011. According to Mitchell, Jay Davis said there were terms that were left out of the contract and there were changes to be made to the contract that were not made. The contract should have had a provision for changes to the terms if any portion of Smith County went wet, rather than just Precinct 4, which is what the contract states. Jay Davis also expected the contract to list additional collateral. Mitchell explained that signature pages were signed and supposed to be held until certain changes were made to the contract. He stated that the contract contains terms that were not agreed upon by the parties. Thus, it was not a reflection of the agreement, or the entire agreement, of the parties.

In his deposition, Mitchell explained that he has a fifty percent interest in Cowboy's and has loaned Cowboy's hundreds of thousands of dollars. He testified that a contract was being formulated but was never completed by George Holland, the Davises' attorney. The parties signed a signature page even though the contract was not correct because the Texas Alcoholic Beverage Commission (TABC) was pressuring them to complete the deal and file it before the end of 2010. Holland was to make changes regarding inventory valuations, contingencies if Smith County was voted wet, and the applicable interest rate, but he did not. Mitchell also wanted the acceleration clause deleted. He testified that he had conversations about his concerns with Gillin and Jim Davis before the contract was signed and with Jay Davis after the contract was signed. He said Jay Davis agreed that Holland never finished the contract, the contract was incorrect, and the parties needed to "get something figured out." Before the contract was signed, Mitchell also had a telephone conversation with Holland during which Mitchell told Holland about the changes that needed to be made. Mitchell stated that the inventory was not done correctly, which affects the sales price, and income from the previous year was overstated. After Cowboy's took possession of Tucker's, Mitchell was told by the accountant for Tucker's that the Davises would just "dummy up" the inventory numbers. The store manager told him prices were not correct in the computer. He testified that as far as he knew, no payments have been made on

the note. He thought Cowboy's was purchasing all assets of Tucker's and its stock, including accounts payable and receivables, inventory, and vehicles.

Kyle Gillin explained by deposition testimony that he bought property in Winona in March 2010 to open a liquor store. He first called Jim Davis in October or November of 2010 regarding TABC rules. By mid-November 2010, he was talking about buying Tucker's, which is in Gregg County. He felt pressure to complete the purchase by December 31 because, beginning January 1, 2011, private clubs in Smith County had to buy liquor in Smith County. In the transaction, Cowboy's was supposed to get Tucker's stock and almost all of its property including the inventory valued at $574,000.00, and receivables of $140,000.00, less payables of $156,000.00. Gillin testified that, on the day they signed the contract, there were terms in the contract that were not right. The interest rate was wrong and there should have been a provision stating that, if anything in Smith County went wet, they would renegotiate the sales price. Holland was supposed to make the changes to the contract, but they signed it because of the pressure to complete the deal. He said the two businesses were already "somewhat operating as one."

Gillin testified that they never discussed anyone being responsible in an individual capacity, and he signed the note before he noticed that he was signing as an individual. He testified that Cowboy's has not paid anything on the note because they had not received what was due to them under the contract. He admitted that they took possession of the inventory and the property, and they got the receivables and private club accounts. He said the inventory was $200,000.00 short, and they never received the stock or the titles to the vehicles. He talked to the Davises about the problems in the contract and, at one point, tried to give the store back. He also suggested that Cowboy's make partial payments until the contract issues were worked out. Gillin testified that Holland, who was hired by Jim Davis, said he would make the changes and redistribute the contracts, but he never did.

In his deposition, Jay Davis testified that he was part owner of Tucker's but not involved in the daily business. He explained that he wanted a clause in the contract addressing the need to renegotiate if Precinct Four went wet. He said Cowboy's wanted to address all of Smith County going wet but he said no to that provision. He did not remember discussing other terms. He said he knows Holland, and Holland is a personal friend of Jim Davis, but he is sure Cowboy's hired Holland. He also testified that he guessed Holland represented the Davises too, but he did not

know. At one point, he communicated to Holland that he was going to back out because Mitchell would not agree to sign in his individual capacity. He testified that there was nothing in the contract that was inconsistent with or different from the terms he thought should be in it. He said that he never saw the stock and that Holland had the stock.

A legally enforceable contract consists of (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). A meeting of the minds is a mutual understanding and assent to the expression of the parties' agreement. *Domingo v. Mitchell*, 257 S.W.3d 34, 40 (Tex. App.—Amarillo 2008, pet. denied). Whether the parties reached an agreement is a question of fact. *Parker Drilling Co.*, 316 S.W.3d at 72. Without a meeting of the minds, there is no enforceable contract. *MTIS Ltd. v. Corporation*, 64 S.W.3d 62, 68 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Mitchell and Gillin testified that there were changes that were to be made to the contract after the signature page was signed. They identified several terms that the parties were unable to agree on. Jay Davis's testimony provided support for Appellants' assertion that the two sides never came to an agreement on certain terms. Thus, Appellants presented more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether there was a meeting of the minds as to all of the terms of the contract. *See Ridgway*, 135 S.W.3d at 600. Therefore, there is a fact question as to whether a legally enforceable contract existed. *See Parker Drilling Co.*, 316 S.W.3d at 72.

Additionally, Gillin testified that the Davises never turned over Tucker's Beverages' stock. If there is a valid contract, the Davises' failure to give Cowboy's the stock would be a breach of the contract. Gillin's testimony provided more than a scintilla of probative evidence to raise a genuine issue of material fact regarding Appellants' alternative cause of action for breach of contract. *See Ridgway*, 135 S.W.3d at 600. Accordingly, the trial court erred in granting Appellees' motion for no evidence summary judgment on Appellants' breach of contract cause of action. *See id*. We sustain Appellants' third issue.

9

In their second issue, Appellants assert that the trial court erred in granting Appellees' motion for traditional summary judgment. They contend that Appellees presented no evidence establishing that they are the owners and holders of the promissory note, the balance due and owing on the promissory note, or that the original note was presented to the court below. Therefore, they argue, Appellees did not prove entitlement to judgment on their claim for recovery on the note or foreclosure. Alternatively, Appellants assert that they raised fact questions on their affirmative defenses of excuse due to prior material breach, mutual mistake, and fraud in the inducement.

Appellees' motion for traditional summary judgment addressed their counterclaim in which they sought a money judgment for the balance of the note or foreclosure. In that motion, Appellees asserted that the warranty deed,[2] deeds of trust, and promissory note supersede the sale and purchase agreement. They argued that Cowboy's failed to pay the promissory note and, pursuant to the deeds of trust, foreclosure is the appropriate remedy. Therefore, focusing solely on Cowboy's default on the note, they argued entitlement to judgment as a matter of law. We disagree that the sale and purchase agreement has been superseded.

Under the facts of this case, the promissory note was executed as evidence that Cowboy's was obligated to pay for the Tucker's Beverages' stock. That obligation arose from the sale and purchase agreement. Appellees provided no valid authority for their argument that the sales contract has been superseded. As Appellants asserted, the note and security documents were derivative of the sale and purchase agreement. Whether the terms of the note can be enforced depends on a prior determination that the sales contract is enforceable. As we have explained, due to trial court error, Appellants' causes of action attacking the validity of the contract, and their liability thereunder, remain unresolved.

Texas courts have no authority to render advisory opinions. *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex. 2001). This prohibition encompasses issues that are not yet ripe. *Id*. An issue is ripe when it presents a fully developed controversy. *Id*. at 234. Here, Appellees' motion for traditional summary judgment solicited a ruling on merely a potential

---

[2] Appellees did not name a warranty deed as summary judgment evidence, and there is no warranty deed in the record before this court.

injury. Therefore, due to the current posture of this case, we do not address the merits of the trial court's ruling on Appellees' traditional motion for summary judgment.

## DISPOSITION

We *reverse* the trial court's judgment and *remand* the case for further proceedings consistent with this opinion.

**GREG NEELEY**
Justice

Opinion delivered October 21, 2015.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 21, 2015**

**NO. 12-14-00085-CV**

**COWBOY'S RETAIL & WHOLESALE BEVERAGE DISTRIBUTION, LLC, KYLE GILLIN, AND GREAT AMERICAN TREATING, INC.,**
Appellants
V.
**PEGGYE DAVIS, JIM DAVIS, JAY DAVIS, AND RICHARD L. RAY, TRUSTEE,**
Appellees

---

Appeal from the County Court at Law No. 3

of Smith County, Texas (Tr.Ct.No. 60,086-B)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the judgment of the court below.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below is **reversed** and this case is **remanded** to the trial court for further proceedings.

It is further ORDERED that all costs of this appeal are hereby adjudged against Appellees **PEGGYE DAVIS, JIM DAVIS, JAY DAVIS, AND RICHARD L. RAY, TRUSTEE**, for which execution may issue; and that the decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*