David Eugene BUNDICK

v.

**BAY CITY INDEPENDENT SCHOOL DISTRICT; Bay City Independent School District Board of Trustees; Rick Bowles, Individually and in his Official Capacity as Principal of Bay City High School; Lee Ann McGonagle, Individually and in her Former Official Capacity as Assistant Principal of Bay City High School; and Marty DeLeon, Individually and in his Official Capacity as Officer of Bay City Independent School District**

No. CIV. G–98–245.

United States District Court,
S.D. Texas,
Galveston Division.

March 28, 2001.

Trustees, Rick Bowles, Lee Ann McGonagle, and Marty DeLeon is **GRANTED** and that all claim asserted by Plaintiff, David Eugene Bundick, against these Defendants are **DISMISSED**.

### FINAL JUDGMENT

For the reasons stated in this Court's Opinion and Order of even date herewith, accepting the Report and Recommendation of the United States Magistrate Judge, it is **ORDERED** and **ADJUDGED** that Plaintiff, David Eugene Bundick, take nothing, that this action be **DISMISSED** on the merits, and that the Defendants, Bay City Independent School District, Bay City I.S.D. Board of Trustees, Rick Bowles, Lee Ann McGonagle, and Marty DeLeon recover from the Plaintiff, David Eugene Bundick, all costs of this action.

### REPORT AND RECOMMENDATION

FROESCHNER, United States Magistrate Judge.

Before the Court is the Motion for Summary Judgment of Defendant, Bay City Independent School District, Bay City I.S.D. Board of Trustees, Rick Bowles, Lee Ann McGonagle, and Marty DeLeon; the motion seeks dismissal of all of the claims asserted by Plaintiff, David Eugene Bundick. After careful consideration of the Defendants' motion and its exhibits, including audio tapes of the disciplinary hearings; Bundick's response to the motion, including its exhibits; and the Defendants' reply to Bundick's response, the Court now issues this report and recommendation to the District Court.

The Court will not recite the facts in detail except as necessary for its analysis; likewise, it will not dwell on the well-founded law of summary judgment. It will simply address Bundick's claims *seriatim.*

Jon Allan Haslett, Watts and Associates, Houston, TX, Theresa A Dean, Law Offices, Bay City, TX, Laurence Wade Watts, Watts and Associates, Missouri City, TX, for David Eugene Bundick, plaintiff.

Nan P Hundere, Stacy Tuer Castillo, Liza Marie Crow, Walsh Anderson et al, San Antonio, TX, for Bay City Independent School District, Bay City Independent School District Board of Trustees, defendants.

Nan P. Hundere, Walsh Anderson et al., San Antonio, TX, for Lee Ann McGonagle, Rick Bowles, Marty Deleon, defendants.

### OPINION AND ORDER

Kent, District Judge.

Before the Court is a Report and Recommendation from the United States Magistrate Judge which recommends that the Motion for Summary Judgment of Defendants be **GRANTED** and that all claims asserted by Plaintiff, David Eugene Bundick, be **DISMISSED;** no objections have been filed by any party.

Upon de novo review pursuant to 28 U.S.C. § 636(b)(1)(C), the Court finds that the Report and Recommendation of the Magistrate Judge is a well reasoned and correct application of law to the facts in this case. Accordingly, the Report and Recommendation is **ACCEPTED** by this Court in its entirety and incorporated by reference herein.

It is, therefore, the **ORDER** of this Court that the Motion for Summary Judgment of Defendants, Bay City Independent School District, Bay City I.S.D. Board of

*FOURTH AMENDMENT CLAIMS*

Plaintiff's initial claim is founded upon the Fourth Amendment, he claims that the warrantless searches of the truck and the toolbox were conducted without legal excuse or justification and without his consent. However, given the relaxed standard applicable to searches and seizures on school properties, Bundick's claim fails.

■ In striking the balance of students' legitimate expectations of privacy and schools' equally legitimate need to maintain the proper educational environment, the United States Supreme Court eased the restrictions to which searches by public authorities are ordinarily subject; the Court rejected the requirements of a warrant or probable cause in favor of a simple "reasonableness under the circumstances" standard. *New Jersey v. T.L.O.,* 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) Determining the reasonableness of any school's search involves a two-fold inquiry: First, whether the search was justified at its inception and, second, whether it was reasonably related in scope to the circumstances which justified it in the first place. *Id.* Where a school official has reasonable grounds to believe a search will disclose evidence that a student has violated a school rule, the initiation of a search is justified. If the methods of the school official are reasonably related to the objectives of the search vis-a-vis the nature of the suspected infraction, the search will pass constitutional muster.

■ In the case at bar, the search of the truck was justified at its inception. Pursuant to a published and routine procedure of the school district, a dog duly trained and certified in exploratory sniffing "alerted" to Bundick's truck. This alert, while not a search itself, *Horton v. Goose Creek I.S.D.,* 690 F.2d 470, 477 (5th Cir.1982), gave school officials reasonable grounds to suspect that a search of the truck would uncover evidence of a rule violation. Cf. *United States v. Williams,* 69 F.3d 27 (5th Cir.1995) ("The fact that the dog alerted provided probable cause to search" defendant's vehicle without a warrant.) The need to obtain either a warrant or Bundick's consent was, therefore, vitiated and it was legally permissible to begin a search.

■ Thereafter, the scope of the search was also justified. As a result of the dog's alert, Sergeant DeLeon, a patrolman of the school district, was notified and Bundick was summoned to the truck. After Bundick confirmed that he had driven the truck to school he was asked to open the cab as well as the toolbox in the bed of the truck. In the toolbox, the illegal knife was found. The dog was trained to detect certain common illegal narcotics, gunpowder, alcohol and medications. Any of these substances are capable of being secreted in a toolbox. Accordingly, after the dog alerted, it was reasonable to believe the toolbox might contain an objective of the search, thereby bringing it clearly within the permissible scope of such a search. See *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (If there is probable cause to search a vehicle, every part of the vehicle and any container in the vehicle that may conceal the object of the search may be examined.) The fact that a machete was found and seized instead of any suspected substance, is of no consequence. The official was legally in a position to view the contents of the toolbox when he discovered the machete, and it was "immediately apparent" that the machete was an illegal knife under the school district rules; therefore, taking possession of the machete constituted a valid "plain view seizure." See *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (For the plain view doctrine to apply two criteria must be met:

the initial intrusion must be lawful and the incriminatory nature of the evidence must be immediately apparent.) Under the circumstances, there was no invasion of Bundick's privacy rights beyond that which was necessary to achieve the legitimate end of preserving order in the school. *New Jersey v. T.L.O.*, 469 U.S. at 344, 105 S.Ct. 733

There was no unconstitutional search of the truck and toolbox or unconstitutional seizure of the machete in this case. Therefore, these claims should be dismissed.

*DUE PROCESS CLAIMS*

■ Bundick asserts that his expulsion deprived him of his liberty and property interests in his education without due process of law, but this claim is without foundation. Despite his suspension and subsequent expulsion, Bundick's education continued. In fact, he completed his studies by the end of the school year, earned sufficient credits to graduate and received his diploma. Accordingly, Bundick cannot complain of being deprived of a basic education, Cf. *Nevares v. San Marcos Consol., ISD*, 111 F.3d 25, 26–7 (5th Cir.1997). Instead, Bundick complains of being denied participation in extracurricular activities and the graduation ceremony of his class. These other activities, however, will not support relief. While it is true that a student has protected interests in a state provided public education, *Goss v. Lopez* 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the federal constitution's due process guarantees do not protect a student's interests in participating in extracurricular activities, *Niles v. University Interscholastic League*, 715 F.2d 1027, 1031 (5th Cir.1983), or graduation. *Williams v. Austin I.S.D.*, 796 F.Supp. 251, 255 (W.D.Tex.1992) Furthermore, nothing in either the constitution or statutes of Texas entitles students to an absolute right to enjoy extracurricular activities, *Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556, 561 (Tex.1985), or a graduation ceremony. *Edgewood I.S.D. v. Paiz*, 856 S.W.2d 269, 270 (Tex.App.—San Antonio, 1993) It is fundamental law that the strictures of due process never arise unless the plaintiff can demonstrate the deprivation of a cognizable liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) In the case at bar, Bundick's inability to establish an underlying protected interest is fatal to this due process claim.

■ Insofar as Bundick accuses the Defendants of denying him procedural due process and the opportunity to be heard in opposition to the Defendants' disciplinary actions, his claim fails not only for the reasons stated above, but for the additional reason that these allegations completely ignore the facts. Three days after the machete was found, Bundick and his mother met with the school Principal who listened to their explanations and suspended Bundick for three days. After his suspension, Bundick returned to school. About one week later, Bundick and his parents received written notice of his expulsion hearing; the notice included a description of the charges against Bundick and extended to him an opportunity to attend, examine the school's evidence and offer his own testimony. Bundick retained an attorney for the hearing. About two weeks later an expulsion hearing was held before the Superintendent of the school district. Bundick attended with counsel; the District's witnesses testified and were cross-examined; Bundick and his mother testified; and arguments were heard. The hearing was then recessed for further investigation. The hearing was reconvened two weeks later. Again, Bundick, his parents and his attorney were in attendance. Additional evidence was taken and closing arguments were heard. Thereafter, the

Superintendent decided to expel Bundick only for the remainder of the semester and provided him and his parents with written notification of that decision. Bundick's attorney then filed a notice of appeal to the Board of Trustees. One week later, the Board met. Bundick, his parents and his attorney appeared and prosecuted the appeal, but the Board took no action, thereby affirming the order of expulsion. In light of these facts, Bundick's complaint rings hollow.

 Because federal courts are extremely, and quite properly, hesitant to become involved in the public schools' disciplinary decisions, only "rudimentary precautions" are commanded by the Constitution. *Goss,* 419 U.S. at 581, 95 S.Ct. 729 (1975) These include "some kind of notice" timely followed by "some kind of hearing." *Id.* at 579, 95 S.Ct. 729 The Due Process Clause does not necessarily provide the right to secure counsel, the right to confront and cross-examine witnesses supporting the charges, or the right to call witnesses in one's defense, *Id.* at 583, 95 S.Ct. 729, but even assuming these additional rights are required when a student faces expulsion, they were all provided to Bundick pursuant to district policy and actual practice. Bundick may question the Defendants' ultimate decision, but he has no basis for challenging the adequacy of the Defendants' procedures.

 Finally, Bundick complains that the measure of discipline meted out by the Defendants was arbitrary, capricious, irrational and without factual foundation; therefore, he argues that it was violative of his right to substantive due process. Expulsion is a severe penalty, however, the substantive due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. For conduct to violate this constitutional right, it must "shock the conscience" and be so offensive that it does not comport with traditional "decencies of civilized conduct"; only the most egregious official conduct can be said to be arbitrary in this constitutional sense. See *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) In the context of school discipline, punishment does not implicate substantive due process concerns unless the action is "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Jefferson v. Ysleta I.S.D.,* 817 F.2d 303, 305–6 (5th Cir.1987)

 Bundick relies heavily upon a recent split-decision from the Sixth Circuit, *Seal v. Morgan,* 229 F.3d 567 (6th Cir. 2000), which held that a school board may not expel a student without first determining that the student "intentionally committed" the acts for which his expulsion is sought. *Id.* at 581 Since Bundick claims he did not know the machete was in the toolbox on March 9, 1998, he argues that the Defendants' have failed to show the necessary culpable mental state to justify his punishment. The Court must admit that this argument has a virtuous appeal, however, with all due respect to the *Seal* majority, it seems Judge Suhrheinrich, in dissent, has a better understanding of the law in this area. Scienter is not a requirement of the school district's policy, and that policy is entitled to deference. Moreover, scienter "can be imputed from the fact of possession." *Seal,* 229 F.3d at 585 Bundick carried the machete in his truck when he worked and he had worked the day before it was found. While clear findings of fact from the Superintendent may have been helpful, it was not irrational to find Bundick knew, even if he had forgotten, of the machete's presence. Without question, expulsion is a harsh punishment, but it is not the business of a federal court

"to set aside decisions of school administrators which the Court may view as lacking in a basis in wisdom or compassion." *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)

It could be hypothesized that a school board could act in a manner so extreme as to violate the substantive due process rights of a student, however, this is not that case. Cf. *Board of Education of Rogers, Arkansas v. McCluskey,* 458 U.S. 966, 970, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982) An illegal knife was found in Bundick's possession on school property. The school district policy, the student code of conduct and state law proscribed such conduct; indeed, state law specifically provides that "a student shall be expelled...if the student, on school property...possesses...an illegal knife" as defined by the Penal Code or by local policy. Texas Education Code § 37.007(a)(1)(B) The Defendants' obedience of state law prohibits any argument, much less any finding, that their disciplinary decision was arbitrary, capricious, irrational or inconsistent with the educational goals of the school.

For these reasons, Bundick's due process claims should be dismissed.

*SECTION 1983 CLAIMS*

Because this Court has found that Bundick suffered from no constitutional violations, his § 1983 claims fail as a matter of law as to all Defendants, *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); accordingly, they should be dismissed.

*EQUAL PROTECTION CLAIM*

Finally, while it appears Bundick may have abandoned his equal protection claim, this Court agrees with the Defendants that Bundick has failed to specify any identifiable group of which he was a member and which was subjected to purposeful discrimination by the Defendants. See *Cole v. Newton Special Municipal Separate School Dist.,* 676 F.Supp. 749, 753 (S.D.Miss.1987) *aff'd,* 853 F.2d 924 (5th Cir.1988). This claim, therefore, should also be dismissed.

*CONCLUSION*

For all of the foregoing reasons, it is the **RECOMMENDATION** of this Court that the Motion for Summary Judgment of Defendants, Bay City Independent School District, Bay City I.S.D. Board of Trustees, Rick Bowles, Lee Ann McGonagle and Marty DeLeon be **GRANTED** and all claims asserted by Plaintiff, David Eugene Bundick, be **DISMISSED.**

The Clerk shall send copies of this Report and Recommendation to the parties who have ten (10) days from receipt thereof to file written objections thereto, pursuant to General Order 80–5. Failure to file written objections within the prescribed time shall bar an aggrieved party from attacking the factual findings on appeal.

March 6, 2001.