**TARKINGTON INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**Randy ELLIS and Patricia Ellis, as Next Friends of J.M., Appellees.**

**No. 09–06–139 CV.**

Court of Appeals of Texas, Beaumont.

Submitted on June 29, 2006.

Decided Aug. 10, 2006.

Opinion Overruling Rehearing Aug. 31, 2006.

Christopher B. Gilbert, Bracewell & Giuliani LLP, Houston, for appellant.

Zeb D. Zbranek, Zbranek Firm, PC, Liberty, for appellees.

Before GAULTNEY, KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

The central issue in this case is whether Texas law mandates the expulsion of a student for unknowingly possessing a weapon on a school district's property. We hold that the Texas Education Code permits school districts to decline to expel students for unknowingly possessing prohibited weapons if the districts have adopted intent as a factor in expulsion decisions. Based on the transcript of the expulsion hearing in this case, the trial court could have reasonably concluded that the Tarkington Independent School District's hearing officer erroneously thought the Texas Education Code mandated a student's expulsion for unknowingly possessing a prohibited weapon. Because the trial court could have concluded that the hearing officer made an error of law, the trial court did not abuse its discretion in granting the student's request for a temporary injunction.

### Background

The Tarkington Independent School District ("District") appeals from the trial court's temporary injunction order of March 20, 2006. In its order, the trial court prohibited the District from continuing to enforce an order that expelled J.M. for possession of a prohibited weapon.

The District's expulsion order states that J.M., "on February 14, 2006, was found to be in possession of an illegal weapon (knuckles) while on the Tarkington High School campus." The District expelled J.M. for one day, February 24, 2006, and placed him in an alternative school in Liberty, Texas, through the end of the school's 2005–2006 term.

On March 2, 2006, J.M. filed suit in Liberty County, Texas, and requested that the court vacate the expulsion order and direct the District to fully readmit him. On March 10, 2006, the trial court entered a temporary restraining order requiring the District to desist from enforcing its expulsion order and to enroll J.M. as a student in the District "without any limitation and with the full rights of any student in good standing." The trial court converted the temporary restraining order to a temporary injunction on March 20, 2006.

This appeal is accelerated. See Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (Vernon Supp.2005) (authorizing accelerated appeals from temporary injunctions); Tex.R.App. P. 28.1. The District contends that: (1) it may hold a student responsible for possessing a prohibited weapon without proving that he knew the weapon was in his vehicle; (2) the trial court failed to give proper credit to the testimony of the high school principal about J.M.'s knowledge that the weapon was in his truck; and (3) the trial court improperly granted a temporary injunction.

### The Texas Education Code and the District's Rules on Possession of Weapons

During a routine check of the District's parking lot, a drug dog alerted on J.M.'s truck. J.M. consented to a search of his truck. During the search, a police officer

found brass knuckles in the pickup's glove compartment. Brass knuckles are "prohibited weapons" under chapter 37 of the Texas Education Code. Chapter 37 further dictates a school district's actions when the district finds such a weapon. In such circumstances,

(a) [a] student shall be expelled from a school if the student, on school property or while attending a school-sponsored or school-related activity on or off of school property:

(1) uses, exhibits, or possesses:

(A) a firearm as defined by Section 46.01(3), Penal Code;

(B) an illegal knife as defined by Section 46.01(6), Penal Code, or by local policy;

(C) a club as defined by Section 46.01(1), Penal Code; or

(D) a weapon listed as a prohibited weapon under Section 46.05, Penal Code[.]

Tex. Educ.Code Ann. § 37.007 (Vernon 2006). While section 37.007 relies on Penal Code definitions for various types of prohibited weapons, the section does not similarly refer to the Penal Code for definitions of the terms "uses, exhibits, or possesses." Further, the Education Code does not define these terms.

At the beginning of the school year, the District gave each student, including J.M., a copy of the Student Code of Conduct. The District's Student Code tracks the language of the Education Code and advises that a student must be expelled for using, exhibiting or possessing knuckles, as defined by the Penal Code.

The Texas Education Code requires school districts to promulgate student codes of conduct. Tex. Educ.Code Ann. § 37.001 (Vernon 2006). As amended in 2005, Section 37.001 of the Texas Education Code currently provides, in perti-

nent part, that in addition to establishing conduct standards, the student code of conduct must also:

(3) outline conditions under which a student may be suspended as provided by Section 37.005 or expelled as provided by Section 37.007;

(4) specify whether consideration is given, as a factor in a decision to order suspension, removal to a disciplinary alternative education program, or expulsion, to:

(A) self-defense;

(B) intent or lack of intent at the time the student engaged in the conduct;

(C) a student's disciplinary history; or

(D) a disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct[.]

Tex. Educ.Code Ann. § 37.001(a) (Vernon 2006). Pursuant to these provisions, the District's Student Code included the intent factor, and states: "In deciding whether to order expulsion, the district will take into consideration: (1.) Self-defense [ ], (2.) Intent or lack of intent at the time the student engaged in the conduct, and (3.) The student's disciplinary history."

Following the search of J.M.'s pickup, the District's principal, Robert Shaw, recommended suspension for three days and placement in an alternative education program pending a hearing. Subsequently, the District provided a hearing before a person designated by the Board of Trustees to "consider and if appropriate to take action on the proposed expulsion of J.M. for up to the rest of the school year for possession of an illegal weapon." See Tex. Educ.Code Ann. § 37.009(f) (Vernon 2006).

## The Expulsion Hearing

At the expulsion hearing, Mr. Shaw recommended that J.M. be expelled for the remainder of the school year and be placed in an alternative education program. Mr. Shaw also testified that under the District's Student Code of Conduct, a student is responsible for the contents of his vehicle whether or not he knew of a weapon's presence. Mr. Shaw explained that the District's Student Code mandates expulsion for possession of prohibited weapons such as knuckles. In support of his interpretation of "possession," Mr. Shaw pointed to the Student Handbook, which states: "Students will be held responsible for any prohibited objects or substances, such as alcohol, drugs, and/or weapons that are found in their cars and will be subject to disciplinary action."

The parties also developed evidence at the expulsion hearing regarding J.M.'s disciplinary history and whether J.M. knew of the presence of the knuckles. With respect to J.M.'s disciplinary history, his file reflects a total of six incidents. These consisted of four incidents for tardiness, one unaccounted absence for twenty-five minutes, and one incident of turning in another's work as his own. J.M.'s record also showed that he had a good report card, and Mr. Shaw characterized J.M.'s disciplinary file as "on the higher end of being good." Mr. Shaw testified that he did not consider J.M. to be a major discipline problem and stated that J.M. had a very good report card with satisfactory marks in conduct.

With respect to J.M.'s knowledge of the knuckles, Mr. Shaw testified that at the time of the search J.M. appeared surprised when he saw the knuckles. Mr. Shaw testified that J.M. said the knuckles were not his, but belonged instead to a friend who was supposed to have taken them out. Mr. Shaw acknowledged that J.M.'s sur-

prised appearance could have indicated J.M. did not know the knuckles were in the pickup. However, Mr. Shaw stated that he did not look at J.M.'s reaction in that way. Instead, Mr. Shaw expressed his opinion that J.M. knew the knuckles were in his vehicle.

J.M. also testified at the expulsion hearing. J.M. testified that he knew a friend of his, J.N., had the knuckles in the truck during the week-end, but J.M. did not know that J.N. left them in the glove box. J.M. also testified that he never told the principal that he knew the knuckles were in his truck and testified that it surprised him when the knuckles were found there.

J.M. bolstered his testimony regarding his lack of knowledge in two ways. First, he introduced a written statement from J.N. stating that J.N. had placed the knuckles in J.M.'s truck without J.M.'s knowledge. J.N. stated that he forgot to take the knuckles when he left J.M.'s truck. Second, J.M. testified that he took a polygraph test to prove he did not know of the presence of the knuckles in his car and that he passed the polygraph. A copy of the polygraph report is included among the exhibits considered at the expulsion hearing.

J.M. also addressed his school activities and grades and stated he was currently involved in baseball, track, and an honor society that requires maintaining an "A" average. J.M. introduced two letters from coaches containing favorable character references.

At the conclusion of the hearing, the school's attorney argued that under the District's Code of Conduct "students are responsible for what they bring on to the campus without regard to whether they admit that they know it is there or not." J.M.'s attorney argued that J.M. should not be expelled because J.M. did not have

the requisite intent to possess the knuckles.

By letter dated February 22, 2006, the Board's designated hearing officer found that J.M. was "in possession of an illegal weapon (knuckles) while on the Tarkington High School campus." She ordered J.M. expelled for one day, February 24th, 2006, and then placed in the Discipline Alternative Education Program in Liberty, Texas for the remainder of the school year. Because the hearing officer did not make any findings of fact or conclusions of law, we are unable to determine with certainty whether the school's hearing officer found that J.M. knew the knuckles were in his pickup. Given the significant and substantial evidence tending to prove that J.M. did not know the knuckles were in his truck, the officer apparently accepted the District's argument that a school district is required to expel students under the Texas Education Code regardless of whether the student knows a prohibited weapon is present.

J.M. requested that the District's Board of Trustees review the decision of the hearing officer. The Board held a hearing on February 28, 2006. Three Board members voted to uphold the decision, with three others voting to refer J.M. to the Tarkington alternative education program rather than to the one in Liberty. The tie vote failed to muster the majority needed to alter the hearing officer's order.

On March 2, 2006, J.M. exercised his right to appeal by filing suit and requesting a trial de novo as provided by section 37.009(f) of the Texas Education Code. When the trial court enjoined the District from enforcing its expulsion order, the District appealed.

### Possession

■ The principal issue in dispute is whether a school must expel a student even when the student's possession is involuntary. The issue is a close one, because neither the Education Code, the source of the District's policy, nor the District's policy expressly define "possession," which can be voluntary or involuntary.

In construing the meaning of "possession" under the Education Code, we are directed by the Code Construction Act to examine, among other factors, the legislative history of the relevant statutory provisions. See Tex. Gov't Code Ann. § 311.023 (Vernon 2005). Section 37.007 of the Texas Education Code, making expulsion for possession of prohibited weapons mandatory, initially became law in 1995. See Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 37.007, 1995 Tex. Gen. Laws 2207, 2355. As originally enacted, the statute did not define whether the term "possession" encompassed cases of both voluntary and involuntary possession. *Id.*

The sole case cited by the District regarding its contention that it is not required to prove that a student voluntarily possessed a weapon is *Bundick v. Bay City Independent School District*, 140 F.Supp.2d 735 (S.D.Tex.2001). In Bundick, a student placed a machete in his truck's tool box, apparently forgot about it, and drove the truck onto campus. The federal magistrate in Bundick states: "Scienter is not a requirement of the school district's policy, and that policy is entitled to deference." Bundick, 140 F.Supp.2d at 740. However, the magistrate then states that under these facts "it was not irrational to find that Bundick knew, even if he had forgotten, of the machete's presence." *Id.* We appreciate the magistrate's statement as an argument that either: (1) scienter was not required under the pre-amended version of Section 37.001 to support the expulsion of a student for possessing a prohibited weapon,

or (2) if scienter was required, evidence that one knowingly received a prohibited weapon is sufficient evidence to support the student's expulsion despite the student's claim that he had forgotten he had the weapon in his vehicle. Because Bundick was decided prior to the 2005 amendments of Section 37.001 of the Education Code, which is the version applicable to J.M.'s case, we do not believe it is helpful regarding whether the Education Code, as amended, remains a zero-tolerance mandate requiring that students be expelled for cases of voluntary and involuntary possession of prohibited weapons. We have located no other cases construing the term possession as it is used in the Education Code.

On the other hand, J.M. argues that by enacting the 2005 amendments, the legislature intended to incorporate the Texas Penal Code definition of possession into Section 37.007 of the Education Code. Under the Texas Penal Code, one's possession must be voluntary to make that person criminally responsible for an act. See Tex. Pen.Code Ann. § 6.01(a) (Vernon 2003).

"Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." Tex. Pen. Code Ann. § 6.01(b) (Vernon 2003).

The 2005 amendments to Section 37.001, in pertinent part, require a district to specify whether it considers intent or lack of intent as a factor in a decision to expel a student. See Act of May 27, 2005, 79th Leg., R.S., ch. 504, § 1(a)(4)(B), sec. 37.001, 2005 Tex. Gen. Laws 1376–1377. In this case, the District incorporated intent as a factor in its expulsion decisions, as shown by its 2005–2006 Student Code of Conduct that so provides.

The legislative history of the 2005 amendment to section 37.001 provides insight into the legislature's intent. The bill analysis prepared by the House Research Organization states that the intent of the amendment is to give discretion to principals to allow them not to expel students when expulsion is not warranted, such as cases where the student accidentally possesses a prohibited weapon.[1] (1) House

1. The House bill analysis for H.B. 603 provides:

BACKGROUND: Education Code, sec. 37.007, requires that a student be expelled from school if the student uses, exhibits, or possesses a firearm, illegal knife, club, or weapon on school property or while attending a school-sponsored or school-related activity on or off of school property.

Penal Code, sec. 6.03, includes definitions of culpable mental states concerning a person's conduct. Intentionally means having a conscious objective or desire to engage in the conduct or cause the result. Knowingly means being aware of the nature of a person's conduct or that certain circumstances exist. Acting knowingly with respect to a result of a conduct means being aware that this conduct is reasonably certain to cause the result. Recklessly means being aware of but consciously disregarding a substantial and unjustifiable risk that the circumstances exist or the result will occur. The

risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint.

DIGEST: CSHB 603 would amend Education Code, sec. 37.007 to require that a student be expelled from school if the student intentionally, knowingly or recklessly uses, exhibits, or possesses a firearm, illegal knife, club or weapon on school property or while attending a school-sponsored or school-related activity on or off of school property. A student who, at the time of the conduct, had a disability that substantially impaired the student's capacity to appreciate the wrongfulness of his or her conduct would not have to be expelled.

. . . .

SUPPORTERS SAY: CSHB 603 would give principals more flexibility in enforcing the state's zero-tolerance laws regarding the

Comm. on Public Education, Bill Analysis, Tex. H.B. 603, 79th Leg., R.S. (2005).

The Senate's analysis of House Bill 603 states that the bill's language with respect to allowing intent or lack of intent to be considered as a factor in expelling a student is identical to language unanimously approved by the Senate in Senate Bill 126.[2] (2) Senate Comm. on Education, Bill Analysis, Tex. H.B. 603, 79th Leg., R.S. (2005). The bill analysis on S.B. 126, the predecessor version to H.B. 603, also demonstrates that the Senate intended to provide districts with additional discretion so that they would not be required to expel a student who unknowingly possessed a prohibited weapon.[3] (3) Senate Comm. on

Education, Bill Analysis, Tex.C.S.S.B. 126, 79th Leg., R.S. (2005).

Thus, the legislative history of the 2005 amendment reflects that the legislature viewed section 37.007 as a "zero-tolerance" statute requiring districts to expel students who involuntarily possess prohibited weapons. The amendment, and its legislative history, show the legislature intended to permit school districts a choice between adopting a "zero-tolerance" policy or a policy allowing alternatives to expelling a student who involuntarily possesses a prohibited weapon.

Had the legislature adopted the Penal Code's definition of possession, a principal

---

possession of weapons in schools by allowing for consideration of whether the behavior was conducted intentionally, knowingly, or recklessly. Since these zero-tolerance laws were enacted in 1997, there have been reports of students being expelled for such actions as accidentally bringing a paring knife to school, even though the student had no intention of using the knife.

Principals have no discretion under current law to respond to individual situations in which expelling a student may not be warranted. As a result, students end up in alternative education programs that often do not offer the same quality of education as a regular classroom, and even excellent students have difficulty maintaining their grades. The bill would not limit a principal's authority to expel students who intentionally bring weapons to school.

The terms intentionally, knowingly, or recklessly are clearly defined in the Penal Code, so principals would not be able to exercise total discretion or favoritism in determining whether a student's behavior met these standards.

OPPONENTS SAY: The bill would give principals too much discretion in deciding whether a student intentionally, knowingly or recklessly committed the offense. This should be handled by courts rather than by a principal, who may now the offender and be too inclined towards leniency or stringency depending on the particular student. House Comm. on Public Education, Bill Analysis, Tex. H.B. 603, 79th Leg., R.S. (2005).

**2.** The Senate bill analysis for H.B. 603 provides:

> H.B. 603 adds to Chapter 37 of the Education Code a provision that the locally adopted student code of conduct must specify whether consideration is given in a decision when suspension, expulsion, or disciplinary alternative education program placement is ordered, to intent or lack thereof, a student's disciplinary history, and/or a student's disability that substantially impairs capacity....
>
> This language, except for the disability provision, is exactly the same as S.B. 126, which passed the senate unanimously in April. The House substituted the language for S.B. 126 in H.B. 603.

Senate Comm. on Education, Bill Analysis, Tex. H.B. 603, 79th Leg., R.S. (2005).

**3.** The Senate analysis for C.S.S.B. 126 provides:

> C.S.S.B. 126 is designed to give local school administrators flexibility when reviewing incidents where students may be expelled or sent to a juvenile justice alternative education program or a disciplinary alternative education program due to zero tolerance under the Safe Schools Act. This legislation is designed to allow for the student's intent or lack thereof to be considered when evaluating an incident.

Senate Comm. on Education, Bill Analysis, Tex.C.S.S.B. 126, 79th Leg., R.S. (2005).

could not expel a student for unknowingly possessing a prohibited weapon. The current provision only requires districts to consider "intent or lack of intent" as a factor in an expulsion decision if they have specified in their student conduct codes that "intent or lack of intent" will be a factor. The legislature did not require all districts to limit prohibited weapon-expulsions to only those cases in which the possession is voluntary. Rather, the legislature allows the district to decide. Whether to have a "zero-tolerance" policy or to include intent as a factor in prohibited weapon-expulsions are decisions for the district.

The District in this case chose a policy that allows it, in the exercise of its discretion, to decline to expel a student under circumstances where the possession is involuntary. However, the District's position at each stage of this proceeding has been that Texas law, and the District's Code of Conduct, mandate that all students found in possession, including those that are not in voluntary possession, be expelled. Based on the legislative history of the 2005 amendments, we conclude that the District's interpretation of the Education Code and of the District's policy is in error.

■ In reviewing the transcript of the expulsion hearing, the trial court could reasonably have concluded the hearing officer accepted the District's erroneous argument that expulsion is mandated regardless of the student's knowledge of the presence of a prohibited weapon. A court may set aside a decision in an expulsion case when the district applies an improper legal standard. *United Indep. Sch. Dist. v. Gonzalez*, 911 S.W.2d 118, 123 (Tex. App.-San Antonio 1995, writ denied) (citing *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986)). As a result, the trial court did not err in granting a temporary restraining order pending the outcome of a trial de novo.

■ In its second issue, the District argues that the trial court failed to properly credit the principal's testimony suggesting that J.M. knew the knuckles were in his pickup. The District suggests that the trial court is limited to reviewing the record under a substantial evidence standard, rather than giving J.M. a pure trial de novo. The District also asserts that a trial court operating under the substantial evidence standard need not concern itself with the correctness of the order, but only its reasonableness. The District argues that when there are controverted issues of fact, the trial court may not substitute its judgment for that of the District.

Had the expulsion hearing transcript reflected that the hearing officer expelled J.M. because she concluded the evidence proved that he knowingly possessed the knuckles, we would need to resolve the legal standard required to review that decision. Our holding, however, is that the hearing officer's decision to expel J.M. was based in whole, or in part, on the District's erroneous argument that Texas law and its own policy mandate expulsion in these circumstances. At this point, the trial court has only decided that J.M. received a hearing before an officer who committed a harmful error. The trial court has not determined whether J.M. voluntarily possessed the knuckles or whether substantial evidence supports the District's expulsion order.

Because the trial court has not yet conducted the required trial de novo, the record does not reflect the approach that the trial court may employ to fulfill the legislature's requirement that grants expelled students trial de novo. We further recognize that the legislature provided no definition in the Education Code of "trial de novo."

■ Although the parties invite us to address the proper standard for the trial court to use in its review of the hearing officer's decision, we are not authorized to render advisory opinions on issues not necessary to a disposition of whether the trial court improperly entered a temporary injunction, the order from which the District appeals in this proceeding. See Tex. R.App. P. 47.1; *Valley Baptist Medical Center v. Gonzalez*, 33 S.W.3d 821, 822 (Tex.2000); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (courts have no jurisdiction to issue advisory opinions). "Texas courts have no authority to render advisory opinions." *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex.2001). This prohibition encompasses the "ripeness doctrine," which "avoids premature adjudication on a hypothetical set of facts." *Id.* "A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc.*, 971 S.W.2d 439, 443 (Tex.1998). Since the trial court has not conducted the trial de novo, it has not yet applied a standard of review that we can properly consider on appeal. We overrule the District's second issue.

■ In its third issue, the District asserts that J.M. failed to show himself entitled to injunctive relief because he did not show a probable right to recovery and failed to demonstrate that the public's interest is served by granting the injunction. At the expulsion hearing, the evidence that J.M. did not have knowledge of the presence of the knuckles was substantial, and the District's evidence to the contrary slight. To obtain injunctive relief, the applicant must show that he is likely to succeed on the merits. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex.1990); *Southwestern Bell Tel. Co. v. Public Util.*

*Comm'n*, 571 S.W.2d 503, 506 (Tex.1978). J.M. satisfied this requirement.

■ However, an applicant for injunctive relief is not required to prove that he will ultimately prevail. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993); *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968). An appellate court reverses a trial court's judgment granting a temporary injunction only upon a showing that the trial court clearly abused its discretion. *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (Tex.1953).

Based on the record at the expulsion hearing, there is substantial evidence that supports J.M.'s contention tat he was unaware of the presence of the knuckles in his pickup. We find no clear abuse in the trial court's implicit finding that a hearing officer, applying the proper standard under the Education Code, could conclude that J.M's expulsion is not required.

Finally, the District makes several public interest arguments in support of its contention that the trial court improperly granted injunctive relief. First, we note that the cases cited by the District regarding injunctive relief-standards do not place a burden on the applicant to show that an injunction serves a public interest. See *Robertson Transports*, 261 S.W.2d at 552; *Charter Medical Corp. v. Miller*, 554 S.W.2d 220, 222 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.). Second, the legislature has not required that an applicant for injunctive relief show that the injunction serves a public interest. See Tex. Civ. Prac. & Rem.Code Ann. § 65.011 (Vernon 1997). Moreover, we believe that the public interest is served by requiring school districts that have adopted intent as a factor in expulsion decisions to recognize that expelling students who involuntarily possess prohibited weapons is not mandated by the Education Code. The public's

interest is not served when a District erroneously believes that expulsion is mandatory under circumstances when it is not. Therefore, we overrule the District's third issue.

AFFIRMED.

## OPINION ON MOTION
## FOR REHEARING

HOLLIS HORTON, Justice.

On motion for rehearing, the Tarkington Independent School District requests that we reconsider our "conclusion that the District adopted the intent requirements for all expulsions." The District argues that it "only adopted an intent requirement for discretionary expulsions." The District then asserts that under its Code of Conduct, possession of brass knuckles is a mandatory expulsion offense, and therefore lack of intent is not a factor that the District can take into account in cases involving the possession of prohibited weapons.

We disagree with the District's contention that its policies mandate expulsion in cases of involuntary possession of prohibited weapons. Expressly included among the District's mandatory expulsion offenses are Texas Penal Code violations for "using, exhibiting, or possessing the following, as defined by the Texas Penal Code: ... A prohibited weapon, such as ... knuckles." A person violates the Penal Code "if he intentionally or knowingly possesses, manufactures, transports, repairs, or sells ... knuckles ..." or other prohibited weapons. Tex. Pen.Code Ann. § 46.05(a) (Vernon Supp.2006). None of the District's other policy provisions apply expressly to knuckles. Thus, it appears that the District's policy of mandatory expulsion for possession of knuckles applies only to cases of knowing or intentional possession.

The sections of the student code that relate to the types of misconduct that result in mandatory expulsion are silent with respect to cases where the possession is not voluntary. However, the immediately preceding section that concerns discretionary expulsions establishes a general rule, and states: "In deciding whether to order expulsion, the district will take into consideration: 1. Self-defense [ ], 2. Intent or lack of intent at the time the student engaged in the conduct, and 3. The student's disciplinary history."

Thus, the Student Code of Conduct does not expressly deal with situations involving involuntary possession of prohibited weapons. In the absence of an express provision in the District's Student Code of Conduct requiring expulsion for cases of involuntary possession of prohibited weapons, we conclude the District's general rule is applicable. The District's general rule for expelling a student requires that it consider the student's lack of intent in making a decision to expel the student.

In its motion for rehearing, the District argues that we should reverse the district court's order enjoining the District from expelling the student because the record from the disciplinary hearing supports its contention that the student knowingly possessed the prohibited weapon. However, the issue before us in this appeal is the court's decision to grant an injunction prohibiting the District from enforcing its decision to expel the student. The legislature granted the student a trial de novo. No party has filed a summary judgment motion, and at this point we do not know whether the record the parties will make in the trial court will be the same, or different, from the record made at the expulsion hearing. We again decline the District's invitation to issue an advisory opinion.

The motion for rehearing is overruled.