**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00115-CV**
_____

**IN RE MARCELINO RODRIGUEZ, DONNA JEAN FORGAS, AND LINDA MARIE WILTZ GILMORE**

**Original Proceeding**

**OPINION**

In this mandamus proceeding, this Court must decide the effect of a school board's attempts to redistrict on timely applications filed for positions on the ballot. We hold that under the circumstances of this case the governing statute requires all trustee positions be filled in the election and that respondent has a mandatory duty imposed by law to accept the applications for the positions that were timely presented.

Marcelino Rodriguez, Donna Jean Forgas, and Linda Marie Wiltz Gilmore have petitioned this Court for a writ of mandamus to compel the performance of a

duty imposed by law in connection with the holding of an election. *See* Tex. Elec. Code Ann. § 273.061 (West 2010). A notice of deadline to file applications for a position on the Beaumont Independent School District[1] Board of Trustees regular election ballot for May 2013 was issued on December 27, 2012. Without specifying the positions open, the notice set a filing period from January 30, 2013, through March 1, 2013. Before expiration of this deadline, relators presented their applications for positions on the May 2013 general election ballot for BISD districts one, two, and three. On March 4, 2013, relators were notified that their applications had been rejected because they had each filed an application for an office that was not scheduled to be on the ballot. *See id.* § 141.032(e) (West Supp. 2012). No other basis for the rejection was stated, and respondent makes no argument that the applications could be rejected for any other reason. Relators contend that by operation of section 11.052 of the Texas Education Code, all seven positions on the Board shall be filled in the May 2013 election; consequently, they argue that BISD and its employees have a mandatory duty to accept their applications and cause their names to appear on the ballot for the May 2013 election. *See* Tex. Educ. Code Ann. § 11.052 (West 2012).

---

[1] Throughout this Opinion, we refer to the district as BISD and to its Board of Trustees as the Board. The actions referred to in this Opinion were taken by various BISD agents and employees acting under the direction and authority of BISD's Board.

The applicable statute provides as follows: "At the first election at which some or all of the trustees are elected in a manner authorized by this section and after each redistricting, all positions on the board shall be filled." *Id.* § 11.052(h). The parties both state that the 2010 federal census required the Board to redistrict and triggered subsection (i) of section 11.052, which states:

> Not later than the 90th day before the date of the first regular school board election at which trustees may officially recognize and act on the last preceding federal census, the board shall redivide the district into the appropriate number of trustee districts if the census data indicates that the population of the most populous district exceeds the population of the least populous district by more than 10 percent. Redivision of the district shall be in the manner provided for division of the district under Subsection (f).

*Id.* § 11.052(i). "[I]f single-member trustee districts are adopted or approved as provided by this section, the board shall divide the school district into the appropriate number of trustee districts, based on the number of members of the board that are to be elected from single-member trustee districts, and shall number each trustee district." *Id.* § 11.052(f). "Trustee districts must be drawn not later than the 90th day before the date of the first election of trustees from those districts." *Id.* In this case, the 90th day before the May 11, 2013 general election was Sunday, February 10, 2013.

At the Board's January 17, 2013 regular meeting, several motions failed, or were tabled, including motions to:

3

- Take Action to Direct Attorney to Seek a Declaratory Judgment from the United States District of Columbia that the Proposed Changes in Adopting a 5/2 voting plan in the [BISD] will have neither the purpose nor will it have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group.

- Take Action to Direct Attorney to prepare new 5/2 map to be submitted to the Department of Justice that addresses their concerns raised by the Department of Justice as stated in their letter of December 21, 2012, and as determined by attorney in her conference with the Department of Justice.

- Take Action to Direct Attorney to prepare 7/0 map for use in the May, 2013 Election, utilizing guidelines adopted at special meeting of 01/10/13.

It appears that the Board had redistricted and sought approval from the Department of Justice for a redistricting plan involving a 5/2 map more than 90 days before the noticed election, but the Department of Justice objected. *See generally* 42 U.S.C.S. § 1973c(a). The Board then sought to redraw districts before the noticed election.

BISD states that it completed its redistricting effort on February 21, 2013, and adopted a redistricting plan. On the same day the Board approved a resolution to hold the trustee election on May 11, 2013. It issued an election order that called for the election of trustees for districts 4, 6, and 7. The Board's February 2013 plan

4

changed the boundaries of the single member districts. The Election Code provides: "A change in a boundary of a territorial unit of a political subdivision other than a county from which an office of the political subdivision is elected is not effective for an election unless the date of the order or other action adopting the boundary change is more than three months before election day." Tex. Elec. Code Ann. § 276.006 (West 2010). Anticipating that the February 2013 order issued too late, the Board amended the order on March 8, 2013, to change the boundaries of districts 4, 6, and 7 again. The Board ordered a candidate application filing period for a period of time that had already expired, however, effectively preventing an applicant from applying to run in a new district.

According to BISD, the March 2013 order adopts the boundaries of the seven single member districts used in the 2001 voting map. This map would have been prepared using data from the 2000 Census; the parties acknowledge in their statement of facts, however, that redistricting was required because of population shifts reflected in the 2010 Census. *See* Tex. Educ. Code Ann. § 11.052(h),(i); *see also Hadley v. Junior Coll. Dist. of Metro. Kansas City*, 397 U.S. 50, 54, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970) (applying the one-person, one-vote standard where members of a governing board are chosen by election).

In *Hadley*, the United States Supreme Court explained that the Court "has consistently held in a long series of cases, that in situations involving elections, the States are required to insure that each person's vote counts as much, insofar as it is practicable, as any other person's." *Hadley*, 397 U.S. at 54. The Court stated that "[i]f one person's vote is given less weight through unequal apportionment, his right to equal voting participation is impaired just as much when he votes for a school board member as when he votes for a state legislator." *Id*. at 55. The Fifth Circuit Court of Appeals has held that a redistricting of school board voting districts that resulted in a deviation of less than ten percent was not unconstitutional under the circumstances there, but noted that the ten percent threshold does not absolutely determine the constitutionality of the redistricting. *See Moore v. Itawamba Cnty.*, *Miss.*, 431 F.3d 257, 259-60 (5th Cir. 2005); *see also Brown v. Thomson*, 462 U.S. 835, 842-43, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983).

Therefore, the requirement that the Board redistrict when there is a ten percent deviation has both constitutional and statutory mandates. We are required under the Code Construction Act to presume that the Legislature intended to comply with the United States and Texas Constitutions. *See* Tex. Gov't Code Ann.

§ 311.021(1) (West 2005). We must construe and apply the statutes in a manner that complies with the Constitution and federal law. *See* U.S. Const. art. VI, cl. 2.

BISD argues that the relators' request for mandamus relief is moot because on March 8 the Board rescinded the redistricting map. It is apparent that the reason for the March 8 order was a concern for the effectiveness of the February 21 order. Having been issued even closer to the election date and after the filing deadlines had closed, the Board's March 8 order suffers from even greater defects. *Id.* Each order on its face attempted boundary designations different from the last Board order. The March 8 order, however, attempted boundary changes and, if the order is given effect, designated an impossible application filing period -- one that had already passed. Additionally, the March 8 order would require an election under a voting district plan that BISD acknowledges exceeds a ten percent deviation. *See Moore*, 431 F.3d at 259 ("[D]eviation in population equality greater than ten percent establishes a *prima facie* case of discrimination . . . ."). We hold that the March 8 order is invalid and has no effect on the May 11, 2013 election.

BISD also argues that section 276.006 of the Election Code has the effect of cancelling the redistricting required by section 11.052 of the Education Code. *Compare* Tex. Elec. Code Ann. § 276.006 *with* Tex. Educ. Code Ann. § 11.052(h)-(i). Because the changes to the district boundaries cannot go into effect for the May

7

election, BISD contends, the May 2013 election will go forward as if no redistricting had been attempted. BISD argues section 11.052(h) does not require all positions on the Board to be filled, and, consequently, its employees were not required by law to accept applications for board positions that were not expiring pursuant to other provisions of the Education Code. *See* Tex. Elec. Code Ann. § 141.032(e). But again, this argument assumes the Board can hold an election with voting districts the Board apparently acknowledges exceed a ten percent deviation, and the argument ignores the fact that the application filing period has passed.

To resolve this issue, we consider the principles set forth in the Code Construction Act. *See* Tex. Gov't Code Ann. §§ 311.001-.034 (West 2005 & Supp. 2012). "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." *Id.* § 311.011(a) (West 2005). Unless a different construction is expressly provided or necessarily required, the word "'[m]ay' creates discretionary authority or grants permission or a power[,]" while the word "'[s]hall' imposes a duty[]" and "'[m]ust' creates or recognizes a condition precedent." *Id.* § 311.016(1)-(3) (West 2005). We presume that: (1) compliance with the United States and Texas Constitutions is intended by the Legislature; (2) the entire statute is intended to be effective; (3) the Legislature intended a just and reasonable result; (4) a result feasible of execution is intended;

8

and (5) public interest is favored over any private interest. *Id.* § 311.021 (West 2005).

Subsections (h) and (i) of section 11.052 both contain mandatory provisions. *See* Tex. Educ. Code Ann. § 11.052 (h), (i). Of the two subsections, subsection (i) contains a deadline: "Not later than the 90th day before the date of the first regular school board election at which trustees may officially recognize and act on the last preceding federal census, the board shall redivide the district . . . if the census data indicates that the population of the most populous district exceeds the population of the least populous district by more than 10 percent." *Id.* § 11.052(i). Subsection (h) states that "after each redistricting, all positions on the board shall be filled." *Id.* § 11.052(h). Nothing in section 11.052(h) expressly provides that the redistricting must have occurred before a specified time.

It is undisputed that the results of the 2010 federal census required that the Board redivide the district. The Board apparently adopted a plan, the 5-2 plan, within the explicit deadline contained in section 11.052(i) of the Education Code, but an objection by the Department of Justice prevented the initial redistricting. It is undisputed that the Board officially recognized and acted upon the 2010 federal census. It is undisputed that the Board anticipated completing the redistricting process for the May 2013 election. The Board entered into an election services

9

agreement for a joint election with the City of Beaumont for May 2013, and set a deadline for the filing of applications to be placed on the ballot. It is also undisputed that relators timely filed applications. The ultimate issue in this proceeding is whether the Board could properly reject those applications at a time when the Board planned to hold an election after redistricting. *See* Tex. Educ. Code Ann. § 11.052(h); *see also* Tex. Elec. Code Ann. § 141.032(e).

The Board failed, after the Department's objection, to change the boundaries for its single member districts within the time specified by section 11.052(i). *See* Tex. Educ. Code Ann. § 11.052(i); *see also* Tex. Elec. Code Ann. § 276.006. Evidently, the Board attempted preclearance for redistricting. *See generally* 42 U.S.C.S. § 1973c. Relators have presented an affidavit by a Board trustee stating that the February 21, 2013 redistricting plan has been submitted to the Department of Justice Voting Rights Division for preclearance. The mandamus record also includes a letter dated February 11, 2013 from the Board's counsel indicating a discussion of "the necessity of expedited review of an alternate 7/0 plan once approved by the Board."

This Court's mandamus authority in this situation is limited to compelling the performance of a duty required by law in connection with the holding of an election; neither party has cited any authority for cancelling the May 2013 election

10

and conducting the election on another date. *See* Tex. Elec. Code Ann. § 273.061. We are to construe the statutes to reach "a just and reasonable result[.]" *See* Tex. Gov't Code Ann. § 311.021(3); *see In re Bell*, 91 S.W.3d 784, 785 (Tex. 2002). We are also to consider the "'object sought to be attained'" by the Legislature in enacting the statutes. *See In re Bell*, 91 S.W.3d at 785 (quoting Tex. Gov't Code Ann. § 311.023(1) (West 2005)). Although our power to "fashion equitable relief in an election case is not unrestrained[,]" this Court may order equitable relief from a statutory deadline. *See In re Gamble,* 71 S.W.3d 313, 318 (Tex. 2002)

The ninety day and the three month requirements in the Education Code and in the Election Code must be construed in these circumstances in a manner that recognizes the Department's ongoing role in preclearing redistricting plans under federal law, and that also recognizes the constitutional requirement of one person, one vote. Federal restrictions are imposed on the school board redistricting and election process. *See generally* 42 U.S.C.S. § 1973c. School districts are limited by state statute to holding elections on certain election dates and in conjunction with certain other entities. *See* Tex. Educ. Code Ann. § 11.0581 (West 2012). We apply the statutes as a whole in this context: When a school district timely completes a redistricting plan more than three months before the noticed election that is to be held after the redistricting, but is subsequently required by federal law to again

11

redistrict to comply with an objection of the Department of Justice, the three month and the ninety day deadlines may, in the Court's exercise of equitable power, be considered satisfied if no other statutory provision prevents the holding or validity of the election. *See In re Gamble*, 71 S.W.3d at 318 (equitable powers). In this case, the Board missed the deadline by eleven days in its second effort at redistricting, but no one argues that this prevented compliance with any other provision of the Election Code or the Education Code in a manner that would invalidate or delay the May election. *See id.*; *compare* Tex. Educ. Code Ann. § 11.052(h) *with* Tex. Elec. Code Ann. § 3.007 (West 2010) ("Failure to order a general election does not affect the validity of the election."). We presume the Board will comply with federal preclearance requirements for the redistricting plan, and seek expedited review if it has not already done so. We hold that the election scheduled for May 11, 2013, is to be conducted using the redistricting map adopted February 21, 2013.

When the Board provided notice of the election and set a filing period for candidates to apply, the Board planned to complete redistricting before the election. Without specifying the positions open, the December 27, 2012 notice provided a filing deadline for applicants. In its response to the mandamus petition, BISD attached a page of its local policy setting forth the terms of office pursuant to

12

section 11.059, but the local policy attached does not expressly address the effect of the redistricting. *See* Tex. Educ. Code Ann. § 11.059 (West 2012). Relators further point out that the local policy was subsequently amended to reflect the proposed 5-2 plan, and the prior policy was not reinstated. Regardless, the Board has not expressly provided for the trustees in office to serve for the remainder of their terms in accordance with section 11.053 of the Education Code. *See id.* § 11.053 (West 2012). Therefore, given a May election, at the time relators each filed for a position on the ballot, all trustee positions were required to be filled by the election. *See id.* § 11.052(h).

BISD makes no argument that the February 21, 2013 election order itself also functions as a decision that the trustees will serve the remainder of their terms. *See id.* § 11.053. The argument cannot be made in this case, because to accept that would allow the Board to make the decision after the application period had commenced. Furthermore, the order does not expressly address the provisions of section 11.053(a).

Allowing the election to go forward under the redistricting map adopted on February 21, 2013, is separate from any consideration of the election order signed on that date. The Election Code provides that "[f]ailure to order a general election does not affect the validity of the election." *See* Tex. Elec. Code Ann. § 3.007. It is

13

undisputed, however, that conducting the election under the 2001 voting map may cause a constitutional violation of the one-person, one-vote standard. *See Hadley*, 397 U.S. at 54-55. For that reason, this Court grants equitable relief from the three month and the ninety day statutory deadlines in the Election Code and the Education Code. *See* Tex. Elec. Code. Ann. § 276.006; Tex. Educ. Code. Ann. § 11.052(i).

When a Board implements statutorily-required redistricting, and does not address the provisions of section 11.053(a), "all positions on the board shall be filled." *See id.* § 11.052(h). For purposes of §11.052(h), redistricting triggered the necessity to fill all positions on the Board in the May election. Relators timely filed applications to be on the ballot within the filing period set out in the December 27, 2012 notice of election.

Relators ask this Court to order the Board's elected secretary to immediately certify relators as unopposed candidates. The Election Code provides: "The authority responsible for having the official ballot prepared shall certify in writing that a candidate is unopposed for election to an office if, were the election held, only the votes cast for that candidate in the election for that office may be counted." Tex. Elec. Code Ann. § 2.052(a) (West 2010). The Board's action on a

14

certification appears to be discretionary, however. *See id.* § 2.053(a),(b) (West 2010).

We hold that the election scheduled for May 11, 2013, is to be conducted using the redistricting map adopted February 21, 2013. We grant the writ, and order respondent to accept relators' applications and to place their names on the ballot, or to otherwise certify the election of unopposed candidates to the extent authorized by the Election Code and the Education Code. Under Rule 2 of the Texas Rules of Appellate Procedure, in order to expedite a final decision in this matter in view of the upcoming election, no motion for rehearing will be permitted. *See* Tex. R. App. P. 2.

PETITION GRANTED.

PER CURIAM

Submitted on March 13, 2013
Opinion Delivered March 18, 2013

Before McKeithen, C.J., Gaultney and Horton, JJ.