In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00434-CV
NO. 09-13-00441-CV

_____

**MARCELINO RODRIGUEZ, DONNA JEAN FORGAS, AND
LINDA MARIE WILTZ GILMORE, Appellants**

**V.**

**BEAUMONT INDEPENDENT SCHOOL DISTRICT, WOODROW REECE,
TERRY D. WILLIAMS, JANICE BRASSARD, GWEN AMBRES AND
ZENOBIA RANDALL BUSH IN THEIR RESPECTIVE OFFICIAL
CAPACITIES AS TRUSTEES OF DEFENDANT BEAUMONT
INDEPENDENT SCHOOL DISTRICT, Appellees**

**and**

**IN RE MARCELINO RODRIGUEZ, DONNA JEAN FARGAS, AND
LINDA MARIE WILTZ GILMORE**

**On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Cause No. E-194,295
and
Original Proceeding**

1

## OPINION

In this accelerated interlocutory appeal, we address how the United States Supreme Court's holding in *Shelby County, Alabama v. Holder*,[1] which declared section four of the Voting Rights Act of 1965[2] unconstitutional, impacts the Beaumont Independent School District's[3] trustee election, presently scheduled on November 5, 2013. The November election, previously scheduled in May 2013, did not occur in May because it was enjoined by a federal court exercising jurisdiction over BISD's suit seeking preclearance. *See* Voting Rights Act of 1965, 42 U.S.C.S. §§ 1973b(b) (section four, found to be unconstitutional on June 25, 2013, approximately one month after the United States District Court for the District of Columbia enjoined the BISD trustee election scheduled for May 2013), 1973c (section five, the section that includes the Act's preclearance requirement).

BISD's preclearance case in federal court concerned a change in the manner trustees were to be elected to the Board. Prior to the 2010 census, all seven BISD trustees were elected from single-member districts. In May 2011, BISD's voters passed a proposition specifying that the next BISD trustee election be held using

---

[1] *Shelby Cnty., Ala. v. Holder*, 133 S.Ct. 2612, 2631 (2013).

[2] Throughout this Opinion we refer to the Voting Rights Act by its common name and designated sections.

[3] In this Opinion, we refer to the district as BISD and to its Board of Trustees as the Board. The actions referred to in this Opinion were taken by various BISD agents and employees under the direction and authority of the Board.

five single-member and two at-large districts (a 5-2 plan). Under the Texas Education Code, the plan approved by voters is required to be implemented beginning with the first regular election of trustees following the voter's adoption of the proposition. Tex. Educ. Code Ann. § 11.052(e) (West 2012).

The trial court rendered the order now on appeal following a hearing between BISD and three individuals who filed to run in the aborted May 2013 election. Reasoning that the plan adopted by voters was not capable of being approved in federal court, the trial court denied the individuals who filed in the May election the relief they sought, and allowed the Board to conduct its trustee election under a seven single-member district plan with no at-large districts.

We disapprove of the trial court's application of federal law to the issues before it, as federal law no longer requires BISD to obtain preclearance to conduct its elections and it must now comply with State law. We conclude the trial court abused its discretion by approving the Board's order and by sanctioning an election that is designed to be conducted in violation of State laws. The trial court's order, as well as the trial court's findings and conclusions that are inconsistent with this Court's opinion are reversed, and the case is remanded to the trial court for further proceedings consistent with the Court's opinion.

Background

After BISD failed to obtain the permission of the Department of Justice to conduct a trustee election on May 11, 2013, under an election map referred to by the parties as Map 7b, BISD rescheduled its trustee election for November 5, 2013. Before scheduling the November 5 election, the Board adopted a resolution requiring that the election take place using another seven single-member district map, Map 7i.

Subsequently, seeking to enforce their rights under the BISD-ordered May election, Marcelino Rodriguez, Donna Jean Forgas, and Linda Marie Wiltz Gilmore, three individuals who had filed for trustee positions in the May 2013 election that used Map 7b to define the seven trustee-district boundaries, amended their petition in a suit they had previously filed in the 172nd District Court of Jefferson County, Texas, to challenge the legality of the November election. In their first amended petition, which is their live pleading for purposes of this appeal, Forgas, Rodriguez, and Gilmore (the putative trustees) asked the trial court to declare, among other things, that BISD was required to conduct the election "according to the 5-2 election scheme approved . . . by Beaumont voters[.]" Seeking to require that BISD conduct the November 2013 election "according to the 5-2 election scheme[,]" or to recognize their right to serve as trustees under

Map 7b, or to require that BISD use Map 7b in the November election, the putative trustees asked the trial court to issue a writ of mandamus and grant them temporary or permanent injunctive relief to prevent BISD from using Map 7i in the upcoming November 5 election.

BISD answered and filed a counterclaim, asking the trial court to declare that BISD could "move forward with an election on November 5, 2013, under a single-member district plan[.]" In the trial court, BISD claimed that using Map 7i for an election in November was "both the lawful and equitable course of action considering the unique circumstances."

In September 2013, the trial court conducted a hearing on the putative trustees' request for mandamus and injunctive relief; however, the other claims raised by the pleadings of BISD and the putative trustees, consisting of all claims for declaratory relief and BISD's claim seeking to have the court approve the November election, were claims that neither party raised for the purpose of the September hearing. Additionally, the parties' claims for declaratory relief and BISD's request asking the court to approve the November election were not matters the court had scheduled for trial. During the September hearing, BISD's attorney specifically objected to the trial court proceeding on any claims other than the putative trustees' request for injunctive and declaratory relief, stating: "[W]e

5

have not been provided 45 days for a final trial on the merits. So, we would object to hearing the case on the merits."

Approximately one week after the trial court heard the putative trustees' claims for injunctive and mandamus relief, the trial court signed an order denying relief. Nevertheless, the trial court's findings and conclusions went further, addressing and resolving the majority, if not all, of the claims for declaratory relief, as well as BISD's request asking the court to approve the November election.

The putative trustees timely perfected an accelerated appeal and filed a petition for writ of mandamus seeking to compel the Board and its officers to use Map 7b with respect to the scheduled November 5 election, or to require that the Board declare the putative trustees elected to office. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2012) (providing accelerated interlocutory appeal for decisions that address injunctions); Tex. Elec. Code Ann. § 273.061 (West 2010) (providing mandamus authority to compel the performance of any duty imposed by law in connection with the holding of an election). We consolidated the matters to review the putative trustees' claims.

Discussion

Although we have previously considered matters related to the May 2013 BISD trustee election,[4] this is our first occasion to consider BISD's election order requiring an election in November 2013, and to consider how the United States Supreme Court's decision in *Shelby County*, decided approximately three months after we decided issues arising from BISD's order concerning a May 2013 trustee election, affects the November 2013 trustee election. BISD issued the election order for the November election in August 2013, ordering a general election with respect to the positions of three of the Board's seven trustees. The November election has been planned using Map 7i, an election map adopted by the Board of Trustees in May 2013.[5] Map 7i calls for an election plan to elect BISD's seven

---

[4]*In re Rodriguez*, 397 S.W.3d 817 (Tex. App.—Beaumont 2013, orig. proceeding) (*Rodriguez I*), subsequent proceeding at No. 09-13-00115-CV, ___S.W.3d ___, 2013 Tex. App. LEXIS 9586 (Tex. App.—Beaumont, Aug. 1, 2013, orig. proceeding) (*Rodriguez II*); *see also In re Neil*, No. 09-13-00144-CV, 2013 Tex. App. LEXIS 4047 (Tex. App.—Beaumont Mar. 28, 2013, orig. proceeding) (mem. op.) (*Neil I*), subsequent opinion at 2013 Tex. App. LEXIS 9585 (Tex. App.—Aug. 1, 2013, orig. proceeding) (mem. op.) (*Neil II*); *In re Jones*, No. 09-13-00107-CV, 2013 Tex. App. LEXIS 2857 (Tex. App.—Beaumont Mar. 18, 2013, orig. proceeding) (mem. op.).

[5]In August 2012, the Board adopted a redistricting map for the 2013 board of trustee elections calling for the election of trustees from five single-member election districts and two at-large election districts, a 5-2 plan. BISD submitted the map to the Department of Justice for preclearance; but, in December 2012, the Department of Justice objected to BISD's request for preclearance of the proposed 5-2 election map. BISD has never issued an order calling for an election under a 5-

7

trustees from seven single-member districts, and Map 7i depicts the election boundaries for the seven trustee positions. The election order now at issue calls for a November 2013 election in trustee districts four, six, and seven.

Although BISD voters passed a proposition to elect BISD trustees under a 5-2 plan in 2011, and BISD presented a 5-2 map to obtain preclearance for a 5-2 election map, litigation subsequently arose concerning the election map that BISD had proposed to use for its next regular general election of trustees; under federal law that still applied in May 2013, the May 2013 election was enjoined by the federal court exercising jurisdiction over BISD's preclearance litigation. Ultimately, in August 2013, after a May election was no longer possible, the United States District Court for the District of Columbia Division dismissed BISD's preclearance litigation, following the United States Supreme Court's decision in *Shelby County*.

In dismissing BISD's preclearance litigation, the federal court exercising jurisdiction over BISD's preclearance case issued an order that states the rescheduling of BISD's trustee election "is a matter of Texas election law, which

2 plan, but the Attorney General made no determination with regard to Map 5f, and no federal court has decided whether the 5-2 map that BISD originally proposed, or any 5-2 map, violates the provisions of any of the various sections of the Voting Rights Act, including section two.

8

appears to have sufficient resources to resolve the matter without this court's involvement." Moreover, while the parties were before the federal court, that court declined a request to use its authority under the Voting Rights Act to enter an order relieving BISD of various requirements that are found in governing Texas statutes regulating BISD's next trustee election. Under section 11.052(e) of the Texas Education Code, when the voters of a school district have passed a proposition requiring that trustees of a district be elected in a specific manner, the "trustees of the district *shall* be elected in the manner prescribed by the approved proposition[,]" beginning with the next regular election of trustees. *See* Tex. Educ. Code Ann. § 11.052(e) (emphasis added).

Both parties asked the 172nd District Court to solve a problem that resulted from the federal court's imposing preclearance requirements on an election authorized by a statute whose preclearance requirements have now been rendered unenforceable as a collateral consequence of the Supreme Court's decision in *Shelby County*. Nevertheless, the parties asked the trial court to impose voting plans that call for trustees to be elected under plans that do not include two at-large districts. The plans proposed by both BISD and the putative trustees are each inconsistent with the 5-2 manner of electing trustees adopted by BISD's voters. *See* Tex. Educ. Code Ann. § 11.052(e). To further compound the problem, the 172nd

9

District Court abused its discretion by looking to federal law that no longer provides the guiding rules for the election of school trustees and by failing to properly apply State law in deciding whether to grant the putative trustees' requests for relief, reasoning that federal law prevented it from enforcing the Legislature's mandate in the Education Code regarding the requirement that BISD's next regular election be conducted using a 5-2 plan.

The putative trustees, in connection with their request for injunctive relief, asked the trial court to require the Board to seat them as trustees under the election order calling for the May 2013 election or to require the Board to conduct the November election using the election map, Map 7b, which the Board had approved using in the May 2013 election. We review a trial court's ruling on a temporary injunction case using a standard of abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). An abuse of discretion occurs when a trial court acts in an unreasonable or arbitrary manner. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

Although BISD's preclearance case was dismissed for lack of jurisdiction, it appears the trial court looked to federal law and not State law for the controlling rules and principles in resolving the issues that were before it. Here, in reaching its conclusions, the trial court assessed which of the various maps, the one proposed by the putative trustees, the one BISD selected for the November election, or a 5-2 map, were likely to be the subject of future claims arising under the Voting Rights Act. However, under the Voting Rights Act, Congress gave federal courts jurisdiction to address the enforcement of the Act; it did not give state courts jurisdiction over Voting Rights Act claims. *See* 42 U.S.C.S. §§ 1973a(a); 1973b(a)(5); 1973c(a); 1973h(c); 1973j(d), (f); 1973aa. Nevertheless, the trial court's order relies heavily on its view that it was tasked to apply what remains of the Voting Rights Act in the wake of the Court's decision in *Shelby County*.

The trial court's initial error in deciding that federal law provided the controlling principles caused it to erroneously conclude that BISD could be excused from applying various State law requirements that control BISD's trustee election. In reviewing the putative trustees' claims that BISD had abused its discretion in ordering a November 2013 election, the trial court disregarded that State law required the election to occur under a 5-2 plan, and it also overlooked the Education Code's provision that requires—in BISD's case—that it conduct its

11

trustee elections jointly with either the City or with the State and County elections on uniform election dates (absent a court order ordering the election on another date). No court order existed when BISD ordered the November election, and the trial court's findings fail to take note that BISD was not authorized to order an election to occur on dates outside the dates provided by State law. Nonetheless, despite the fact that no court order was in place when BISD issued its election order for the November election, the trial court's order then refers to the November election as "appropriate and justified[,]" and characterizes BISD's conduct in scheduling the election as proper. *See* Tex. Educ. Code Ann. § 11.0581 (West 2012) (*mandating* that school trustee elections be conducted in a joint election with either city elections or general elections for State and county officers).

With respect to a November 2013 election, the Education Code provision that governs trustee elections for independent school districts does not provide that an election of school trustees can occur in November of odd-numbered years when no City or State and County officials are being elected; consequently, BISD's order calling for a November 2013 trustee election orders the election to occur on a date the Legislature has not authorized for trustee elections to occur.[6] *See id.* (requiring

---

[6]While it is clear that a court, acting under section 41.001(b)(3) of the Election Code, has some ability to provide a political entity with alternate dates for an election, BISD did not file suit seeking to have a trial court order an election;

12

joint elections); *see also* Tex. Elec. Code Ann. §§ 41.001(a) (West Supp. 2012) (establishing uniform election dates), 41.004 (West 2010) (requiring special election to be held on uniform election date), 41.008 (West 2010) (an election held on a date not permitted by subchapter 41A is void).

The putative trustees, like the trial court, have also not properly considered the consequences of the federal court's dismissal of BISD's preclearance case or that court's instruction to resolve questions regarding BISD's upcoming trustee election as a matter of State law. Like the November election, the order calling for the May election on which the putative trustees focus is also a creature of federal preclearance requirements—that election was also to occur using a map that included no at-large districts, a consequence of objections lodged by the

---

instead, BISD ordered the election and has asked the trial court for permission to go forward on the date that it already selected. *See* Tex. Elec. Code Ann. § 41.001(b)(3) (West Supp. 2012). While the November date BISD has chosen is a uniform election date, it is not a date that a joint election with City or State and County officials is being conducted, a separate requirement that applies to school trustee elections under the Education Code. *See* Tex. Educ. Code Ann. § 11.0581 (West 2012). It is not clear whether a trial court, acting under section 41.001(b)(3) of the Election Code, has the discretion to order an election on a date when the election cannot be conducted in conjunction with the election of City or State and County officials. *See* Tex. Elec. Code Ann. § 41.001. Nevertheless, that issue has not been briefed by the parties, and we need not resolve that potential issue because BISD also violated the Education Code's requirements by ordering an election that includes no at-large districts contrary to a proposition approved by voters since BISD's last trustee election.

13

Department of Justice under preclearance proceedings that have since been dismissed.

Nevertheless, the putative trustees maintain they have rights under BISD's order calling for the May election. According to the putative trustees, BISD did not have the authority to cancel the order calling for the May 2013 election. *See* Tex. Elec. Code Ann. § 2.082 (West 2010) ("An authority that orders an election may cancel the election only if the power to cancel the election is specifically provided by statute."). Although the putative trustees acknowledge the May election was enjoined by the federal court exercising jurisdiction over BISD's preclearance case, they contend the May election order should now be enforced. But, due to the federal court's injunction, the May election never occurred.

After the May election was enjoined, BISD continued to negotiate for preclearance, ultimately seeking preclearance on a map that would have allowed, if approved by the federal court, an election in a manner contrary to the 5-2 plan that had been approved by BISD's voters. Nonetheless, under the Voting Rights Act, the federal preclearance court could have approved BISD's election of trustees in a manner inconsistent with State law. It never did so. While the single-member district maps at issue in the trial court are both creatures of federal statutory preclearance requirements that existed prior to the proceedings now at issue, both

14

BISD and the putative trustees have failed to recognize that after *Shelby County* issued, they were operating in a new landscape.

Given the relatively short time period the parties have had to react to the decision in *Shelby County*, confusion concerning the impact of *Shelby County* on the scheduled November election is understandable. For instance, in each of our prior opinions, all of which pre-date *Shelby County*, we incorrectly assumed that the federal court would ultimately act on BISD's preclearance request, hear the parties' Voting Rights Act arguments on their merits, and exercise the authority granted by Congress to approve an election map and an election on an alternate date, even if State law provided otherwise.[7] But, our assumption that BISD would achieve preclearance proved incorrect; and, the United States Supreme Court's decision in *Shelby County*, together with the dismissal of BISD's preclearance request for lack of jurisdiction, prevent the putative trustees, BISD, and the trial court from using federal preclearance requirements to excuse BISD's failure to comply with State statutes, as they now provide the guiding rules that govern BISD's next trustee election. *See Shelby Cnty.*, 133 S.Ct. at 2631.

---

[7]*See Rodriguez I*, 397 S.W.3d at 822; *Neil I*, 2013 Tex. App. LEXIS 4047, at *2, *Rodriguez II*, 2013 Tex. App. LEXIS 9586, at *7; *Neil II*, 2013 Tex. App. LEXIS 9585, at *2; *Jones*, 2013 Tex. App. LEXIS 2857, at **2-3.

15

While the putative trustees argue that BISD could not legally cancel the May election order, we conclude that order was rendered moot by the injunctive relief granted by the federal court hearing BISD's preclearance request. We further conclude that the putative trustees, who were never seated as elected trustees, gained no rights to have the election order calling for the May 2013 election enforced, nor did the putative trustees gain any right to be seated as trustees by virtue of the moot election order. BISD's trustees do not have a duty to implement a moot order; consequently, the relators have not shown they are entitled to mandamus relief from this Court. *See* Tex. Elec. Code Ann. § 273.061.

In an effort to avoid the statutory limits that exist on a court in approving its November election order, BISD argues that it has sovereign authority to schedule an election. The trial court agreed, citing cases that do not support its ruling. *See Yett v. Cook*, 281 S.W. 837 (Tex. 1926); *Castillo v. State ex. rel. Saenz*, 404 S.W.2d 97, 97-98 (Tex. Civ. App.—San Antonio 1966, no writ). In *Yett*, the City of Austin amended its city charter to change its form of government, but called for an election too soon to enable election officials to comply with then-existing election law concerning poll tax lists. 281 S.W. at 838-39. The Texas Supreme Court held the provision of the charter that required the election to be held on an impossible date was void. 281 S.W. at 838-39. The court reasoned the import of

the legislation was that the election be held, not the date of the election; although it was impossible to conduct an election on the date stated in the city's charter for the initial special election, that did not mean no election could ever be held. *Id.* at 839-40. Relying on a provision in the charter that allowed the city council to take corrective action to correct deficiencies, the court held the council had the authority to conform its election date to the general election law, and that it could be required to do so through mandamus. *Id.* at 843. *Yett* does not support BISD's assertion that it possesses extra-statutory authority to call for an election where that election would violate other mandatory statutory provisions that apply to a trustee election that is required to be conducted in a certain manner based on a proposition passed by a school district's voters.

*Castillo* also does not support the proposition that political subdivisions possess extra-statutory authority to order elections under circumstances that violate State law. 404 S.W.2d at 97. In *Castillo*, a city was newly-incorporated on March 30th; at their first meeting on April 5, the initial commissioners set the first election for June 5. *Id.* at 98. Without notice or order for election, a different political faction conducted an election on the regular election date, April 6, and several members of that faction were elected commissioners. *Id.* Subsequently, in a quo warranto proceeding to determine who had the right to be seated as

commissioners, the trial court ousted the commissioners who prevailed in the June election and installed the commissioners elected in the April 6 election. *Id.* On appeal, the court reasoned that the city's recent incorporation made it impossible to conduct the city's initial election on the regular election day, and declared the April 6 election void. *Id.* at 99. The court reasoned that the time and the place for elections are generally held to be of the essence with respect to an election, but where it was impossible to hold an election at the time and in the manner prescribed by the Election Code, and where the only other alternative would be to never hold the election, the election should be held within a reasonable time.[8] *Id.* Thus, *Castillo* does not concern whether a court may authorize relief regarding school board elections that violate mandatory provisions in the Education Code, an issue the trial court resolved during the hearing now on appeal, nor did *Castillo* address a court being asked to approve an election before the election occurred. Instead, *Castillo* addresses the effect of elections that were conducted after the elections had occurred.

The preclearance court also never issued an order authorizing BISD to conduct the election using Map 7i, a single-member district map, even though that

---

[8]We note that the current version of the Election Code provides for a city to change the date of its general election to another authorized uniform date. *See* Tex. Elec. Code Ann. § 41.0052 (West Supp. 2012).

18

court was asked to do so before it dismissed BISD's preclearance case. Before the Supreme Court decided *Shelby County*, BISD and the Department of Justice filed a motion in federal court seeking approval for a November 5 election date utilizing Map 7i, a seven single-member district plan. The federal court did not act before the Supreme Court invalidated the formulas used under the Voting Rights Act to determine which jurisdictions were subject to preclearance requirements. *Shelby Cnty.*, 133 S.Ct. at 2631. In overturning section 4(b) of the Voting Rights Act, the Supreme Court noted that the coverage formula was reenacted by Congress "based on 40-year-old facts having no logical relation to the present day." *Id.* at 2629.

Whether the Justice Department utilized these same formulas in formulating its preclearance decisions is not apparent; but, because the Supreme Court overturned the Voting Rights Act's preclearance requirements, the Justice Department is now required to prove, not just object, that the election map is racially discriminatory should it choose to file a future claim regarding any particular 5-2 plan BISD might decide to adopt. *See* 42 U.S.C.S. § 1973. Since the Department of Justice will have the burden of proving any claim that all 5-2 plans BISD might adopt would be discriminatory on the basis of race in a district where the demographics reflect that the district's largest single racial group is comprised of persons of African-American descent, we cannot know or predict whether the

federal government will even attempt to interrupt BISD's future elections under a hypothetical 5-2 plan. Nevertheless, we do not intend to suggest that BISD cannot obtain state court approval to conduct a legal election. Nor are we suggesting to BISD that it adopt a particular election map, except that the map BISD adopts for its now-delayed regular trustee election must, by State law, allow for the election of trustees from two at-large districts to carry out the proposition passed by BISD's voters regarding the manner of electing BISD's trustees. *See* Tex. Const. Art. II, § 1; Tex. Educ. Code Ann. § 11.052(e).

When BISD was unable to conduct its trustee election in May, it was on notice that it needed court approval to conduct the election now at issue. Having been denied that permission in federal court, BISD should have requested that the 172nd District Court order a legal election under the requirements of State law. It did not; instead, it asked the trial court to approve an election under a map that fails to include two at-large districts. Moreover, in ruling on the putative trustees' request for injunctive relief, the trial court should not have made what appear to be final decisions on disputed facts, as the purpose of a temporary injunction "is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru*, 84 S.W.3d at 204. Because the only question before the trial court in a temporary injunction hearing is whether the applicant is entitled to

20

preserve the status quo pending trial on the merits, a trial court errs if it grants permanent relief in an injunctive order. *See Elliott v. Lewis*, 792 S.W.2d 853, 854 (Tex. App.—Dallas 1990, no writ). In our opinion, although the trial court's order states that the court is denying injunctive relief, the order goes far beyond preserving the status quo. A trial court cannot, by the use of the power delegated by the Legislature to order alternate election dates, approve an election that violates the mandatory requirements for elections of trustees established by the Legislature. By issuing an order approving BISD's planned November election, the trial court reached beyond the matters necessary for its decision to deny the putative trustees' requests for relief.

While BISD has also argued that it remains subject to electing trustees in single-member districts under the requirements of an order rendered by the United States District Court for the Eastern District of Texas in 1985, and the trial court relied on that 1985 order in concluding that federal requirements prevented it from approving an election under a 5-2 plan, the 1985 order does not control BISD's elections. The order, introduced during the hearing, provides that "[a]ll modifications of the adopted plan are hereby enjoined until receipt of the 1990 Federal census data[.]" There is no indication in the record showing that BISD ever returned to the United States District Court for the Eastern District of Texas after

21

the 1990 census. By its express terms, the 1985 order expired following BISD's receipt of the 1990 census.

Although we disagree with the trial court's decision to issue findings that relate to a determination about claims of discrimination that have not yet been made by the Department of Justice and may never be made in the aftermath of *Shelby County*, we are nevertheless inclined to agree that the trial court did not abuse its discretion in denying the putative trustees' the relief they requested by writ of mandamus or their request for injunctive relief. *See generally Robinson v. Parker*, 353 S.W.3d 753, 756 (Tex. 2011) (instructing courts to avoid "'advising what the law would be on a hypothetical set of facts'") (quoting *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 444 (Tex. 1998)); *see also McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex. 2001) (discussing advisory opinions).

In our opinion, the putative trustees were not entitled to be installed as trustees under BISD's order for the May election because subsequent events rendered that election moot: the federal injunction that prevented the election from occurring as well as the United States Supreme Court's decision in *Shelby County*. *See generally In re Uresti*, 377 S.W.3d 696, 696 (Tex. 2012); *Bd. of Tr. of Georgetown Indep. Sch. Dist. v. Kreger*, 369 S.W.2d 916, 917 (Tex. 1963)

22

(concluding that the federal desegregation order mooted dispute over expenditure of funds for segregated facilities). Regardless, Texas law does not allow a trial court to enjoin an election ordered by a co-equal branch of government, even if that election is subject to being later determined that it was conducted in violation of Texas law. *See Blum v. Lanier*, 997 S.W.2d 259, 263 & n.6 (Tex. 1999); *see also City of Dallas v. Dallas Consol. Elec. St. Ry. Co.*, 148 S.W. 292, 294 (Tex. 1912). Nevertheless, the matters relating to the parties' respective declaratory judgment claims were not properly before the trial court during the hearing at issue, and the trial court abused its discretion in reaching the merits of claims that were not properly before it at the hearing.

## Conclusion

The real parties in interest do not have a mandatory duty to declare the relators to be unopposed in the November 2013 election or to require the Board to implement Map 7b in the November 2013 election; accordingly, the petition for writ of mandamus is denied. The trial court's order and its findings on the motion for temporary injunction are reversed, and the matter is remanded to the trial court for further proceedings consistent with this Court's Opinion.

REVERSED AND REMANDED; PETITION DENIED.


_____
HOLLIS HORTON
Justice



Submitted on October 10, 2013
Opinion Delivered October 17, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.